Patricia L. PRESTON; La Juan M. Mitchell; Leonard Jamar Preston, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 88–6166.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1990.

Decided Jan. 16, 1991.

Al Schallau, Rancho Palos Verdes, Cal., for plaintiffs-appellants.

James R. Sullivan, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before FERGUSON, NORRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Patricia A. Preston, La Juan M. Mitchell, and Leonard Jamar Preston (collectively,

"the heirs"), heirs of Leonard Preston, Jr. ("Preston"), appeal from a judgment in favor of the United States in a wrongful death action brought under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq. The heirs' sole contention on appeal is that the district court erred in denying two motions for recusal of Judge J. Spencer Letts of the United States District Court for the Central District of California. The first recusal motion, which is the only motion we consider in this appeal, was made on the ground that, prior to being appointed to the federal bench, Judge Letts was "of counsel" to the law firm of Latham & Watkins. The law firm represented Hughes Aircraft Company ("Hughes"), Preston's employer at the time of his death. Although Hughes was never a party to the litigation before Judge Letts, had judgment been rendered against the government a potential claim for indemnification against Hughes would have been triggered under a contract between Hughes and the government.

We have jurisdiction under 28 U.S.C. § 1291. We vacate the judgment and remand to the district court for a new trial.

## FACTS

On January 18, 1983, Preston died of asphyxiation in an environmental test chamber owned by the United States Navy and leased to Hughes. In March 1983, Hughes retained the law firm of Latham & Watkins to represent it in connection with this incident.

On December 10, 1985 and February 14, 1986, the heirs filed two separate wrongful death actions in the United States District Court for the Central District of California. These suits were filed against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. The cases were transferred to Judge Letts' calendar on February 10, 1986 and March 14, 1986.

They were consolidated and pretrial discovery proceeded.

On April 27, 1987, Judge Letts denied the heirs' motion for an extension of the discovery cutoff date. Shortly thereafter, counsel for the heirs learned that Judge Letts had been "of counsel" to Latham & Watkins before he was appointed to the federal bench. Based on this discovery, the heirs filed their first motion to disqualify Judge Letts. The motion was filed July 20, 1987 and referred to Judge Terry J. Hatter of the United States District Court for the Central District of California. On July 27, 1987, Judge Hatter denied the motion because "as [the heirs] readily admit, Hughes [is] not a party to [the] action; the only defendant is the United States." *Preston v. United States*, No. CV 85–8021 JSL (C.D.Cal. July 27, 1987) (order denying section 455(b)(2) motion to disqualify Judge Letts).

A bench trial commenced before Judge Letts on March 27, 1988.[1] During the trial, Judge Letts denied the heirs' second motion for his recusal. This motion dealt with Judge Letts' acquaintance with one of the attorneys of the Latham & Watkins law firm who had worked on matters for Hughes in connection with Preston's death.[2] At the conclusion of the trial, Judge Letts granted judgment in favor of the government and against the heirs. This appeal followed.

## DISCUSSION

A threshold issue we first consider is whether the first motion for Judge Letts' recusal was timely.

The statutory basis for recusal which we consider in this appeal is grounded in 28 U.S.C. § 455. This section contains no explicit requirement of timeliness. However, "[i]t is well established that a motion to disqualify or recuse a judge under 28 U.S.C. § 144 [as well as] ... § 455 must be

---

1. Trial by jury is not available in an action against the United States government under the Federal Tort Claims Act. 28 U.S.C. § 2402.

2. Because we conclude that the heirs' first motion for recusal of Judge Letts was improperly

denied by Judge Hatter, we do not reach the question whether Judge Letts should have granted the heirs' second recusal motion brought during trial.

made in a timely fashion." *Molina v. Rison*, 886 F.2d 1124, 1131 (9th Cir.1989) (recusal motion untimely when made eight years after conviction despite awareness of grounds for recusal at the pretrial stage). *See also Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir.1981) (per curiam) (recusal motion under 28 U.S.C. § 144 untimely where made sixteen months after grounds for disqualification arose), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); *United States v. Conforte*, 624 F.2d 869, 879–80 (9th Cir.) (where defendant was aware before trial of grounds for recusal under section 455, issue could not be raised for first time on appeal absent "exceptional circumstances"), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

■ We require recusal motions to be lodged in a timely fashion because the absence of such a requirement would result in increased instances of wasted judicial time and resources (*In re International Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir.1980)) and a heightened risk that litigants would use recusal motions for strategic purposes (*Ex Parte American Steel Barrel Co. and Seaman*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 179 (1913)). While no per se rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained. *Cf. United States v. Furst*, 886 F.2d 558, 581–82 n. 30 (3d Cir.1989) (motion to recuse judge from sentencing timely where movant "did not unreasonably delay in filing ... motion"), *cert. denied*, —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990).

■ The heirs'· first motion for recusal was filed approximately eighteen months after the transfer of their cases to Judge Letts. The motion was filed shortly after Judge Letts denied the heirs' request to extend the cutoff date for discovery. Ordinarily, these circumstances would indicate that the motion was not timely. *Cf. Wood*, 644 F.2d at 802 (recusal motion not timely when not made "until it was clear that the court intended to dismiss the underlying claim without leave to amend"). *Accord Willner v. University of Kansas*, 848 F.2d 1023, 1028 (10th Cir.1988) (motion to recuse cannot be based solely on adverse rulings), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *Hamm v. Members of the Bd. of Regents*, 708 F.2d 647, 651 (11th Cir.1983) (same). But here, the ground for the motion was Judge Letts' association with the Latham & Watkins law firm prior to the time he became a federal judge. The heirs'· counsel asserts that he did not learn of this association until ten days before the first recusal motion was filed. This allegation is uncontroverted.[3]

■ We conclude that the recusal motion was timely filed. We now consider whether the district court abused its discretion in denying the motion. *See United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986) (denial of motion for recusal reviewed for abuse of discretion).

Under 28 U.S.C. §§ 455(a) and (b)(2),

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

. . . . .

(2) Where in private practice he served as lawyer in the matter in controversy,

---

**3.** The heirs' counsel allegedly made his discovery of Judge Letts' prior association with Latham & Watkins when he read a profile of Judge Letts in the Los Angeles Daily Journal on July 10, 1987. Although the profile was a reprint of a May 16, 1986 article, the heirs' counsel averred that he had not seen the first publication. The government suggests it is more than mere coincidence that the "discovery" was made shortly after Judge Letts denied the heirs' motion to extend discovery. While we note the close chronological relationship between the adverse ruling by Judge Letts and the heirs' motion for his recusal, the government offers us nothing but speculation that the heirs were "utiliz[ing] a disqualification issue as part of [their] trial strategy." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....

28 U.S.C. §§ 455(a), (b)(2).

The relationship between section 455(a) and section 455(b)(2) is not complicated. As we said in *Herrington v. Sonoma County:*

> Section 455(a) covers circumstances that *appear* to create a conflict of interest, whether or not there is actual bias. *Davis v. Xerox,* 811 F.2d 1293, 1295 (9th Cir.1987). Section 455(b) covers situations in which an *actual* conflict of interest exists, even if there is no appearance of one. *Id.* Section 455(b) also describes situations that create an *apparent* conflict, because it provides examples of situations in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a). *See United States v. Conforte,* 624 F.2d 869, 880–81 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

*Herrington v. Sonoma County,* 834 F.2d 1488, 1502 (9th Cir.1987).

For our purposes, it is sufficient to state that section 455(b) provides us with a concrete example where the appearance of partiality suffices to establish a ground for recusal under section 455(a) even absent actual bias. *Cf. United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980) (section 455(b)(1) provides specific example of situation in which a judge's impartiality might reasonably be questioned). Here the heirs make no claim of actual bias.[4] Instead, they rely on the appearance of partiality.

The standard for judging the appearance of partiality requiring recusal under 28 U.S.C. § 455 is an objective one and involves ascertaining "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson,* 718 F.2d 315, 321 (9th Cir.1983). *See also Herrington,* 834 F.2d at 1502; *Studley,* 783 F.2d at 939. We need not explore whether an appearance of partiality existed in this case. The drafters of section 455 have accomplished this task for us. Section 455(b) requires a judge's recusal if "a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter" then before the judge. 28 U.S.C. § 455(b). Under section 455(b), as we interpreted it in *Herrington,* the recusal of Judge Letts was required. Judge Letts was of counsel to Latham & Watkins from early 1982 through January 1986 when he was appointed to the federal bench.[5] Since March 1983, Latham & Watkins has represented Hughes in a state court action involving Preston's death. Further, in the present action which was filed in December 1985, Latham & Watkins represented Hughes by (1) filing Hughes' objections to a subpoena and its designation of witnesses for a deposition, (2) representing Hughes during deposition proceedings, and (3) submitting an affidavit of a Latham & Watkins partner for the government's use in opposing the heirs' motion for an order extending discovery cutoff and rescheduling a pretrial conference.

It is irrelevant that Latham & Watkins' client, Hughes, was not a named party to

---

4. Indeed, nothing in the record before this court suggests that Judge Letts acted in anything other than a professional manner in his conduct of the proceedings, and the heirs do not seriously contend to the contrary.

5. The record is unclear as to Judge Letts' precise relationship with the law firm or the meaning of his "of counsel" title. The heirs contend that the association was a close one. The government likens it to that of an independent contractor and a principal. Judge Letts himself apparently believed it to be serious enough to require him to recuse himself from all cases in which Latham & Watkins was counsel for the first two

years of his tenure on the bench. This self-imposed recusal included all matters involving clients of Latham & Watkins and not just those pending at the time he was of counsel to the firm.

We see no need to delve into the precise nature of the previous relationship between Judge Letts and Latham & Watkins. It is plain that Judge Letts "practiced law" with the firm and that "during such association [the firm served] as ... lawyer[s] concerning the matter" then before Judge Letts. Such a relationship is all that the statute requires.

the suit before Judge Letts. The Supreme Court has never limited recusal requirements to cases in which the judge's conflict was with the parties named in the suit. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Rather, the focus has consistently been on the question whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public. *See id.* at 858–62, 108 S.Ct. at 2201–03. We believe that the present case generates such a risk.

One of the contracts between Hughes and the government contained a contractual indemnification clause. This clause provided in part that "[t]he Contractor (Hughes) shall indemnify and hold the Government harmless against claims for injury to persons or damage to property of the Contractor or others arising from the Contractor's possession or use of the Facilities, including chamber C–41." Chamber C–41 was the environmental test chamber in which Preston was killed. If the government had been found liable in the case before Judge Letts, Hughes would have faced a potential claim for indemnification by the government.[6]

The existence of the indemnification clause also defeats the government's argument that denial of the recusal motion was harmless error. The judgment which relieved the government of liability to the heirs eliminated any claim the government would have had against Hughes for indemnification. True, Judge Letts made findings which placed the blame for Preston's death squarely on Hughes, but this does not change the fact that the ruling in favor of the government benefited Hughes. Hughes was Preston's employer, and as such its liability may well be limited by California's workers compensation law. This limitation would not be available to Hughes in a claim for indemnification by the government.

▮ Having concluded that the recusal motion was improperly denied, we must fashion an appropriate remedy. Section 455(a)

neither prescribes nor prohibits any particular remedy for a violation.... [I]n determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. We must continuously bear in mind that "to perform its high function in the best way 'justice must satisfy the appearance of justice.' "

*Liljeberg*, 486 U.S. at 864, 108 S.Ct. at 2204 (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

The heirs ask us to reverse the judgment and remand with instructions that the liability of the government has been established. We decline to do so. This appeal does not raise a question that goes to the merits of the controversy. It is limited to the propriety of the denial of the recusal motion. There is no way, however, to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge.

We recognize that this case has been tried once to judgment and that a retrial will involve considerable additional expense, perhaps with the same result as the first trial. This is unfortunate. It prompts us to repeat the words of the Fifth Circuit that "[t]he unfairness and expense which results from disqualification ... can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned." *Potashnick v. Port City Constr. Co.*, 609

---

**6.** The government argues that no appearance of partiality existed because Hughes stands ready to contest the applicability of the indemnity clause to these particular circumstances. While Hughes certainly may do so, we fail to perceive how such a potential contest of liability on the part of Hughes erases the appearance of partiality.

F.2d 1101, 1115 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

The judgment of the district court is VACATED and this case is REMANDED for further proceedings consistent with this opinion.