Affirmed by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge MURNAGHAN and Judge WILLIAMS joined.
 

 OPINION
 

 DIANA GRIBBON MOTZ, Circuit Judge:
 

 After an eighteen-day trial, a jury convicted Gary L. DeTemple of numerous counts of arson, wire fraud, and bankruptcy fraud. DeTemple contends that we must reverse these convictions because the district judge assertedly erred in failing to recuse himself, in denying DeTemple court-appointed counsel for part of the pre-trial period, and in refusing to permit DeTemple’s fourth court-appointed attorney to withdraw. DeTemple also argues that this attorney provided him with ineffective assistance of counsel. Finding that none of these grounds entitle De-Temple to relief, we affirm his convictions.
 

 I.
 

 In November 1989, DeTemple, an owner in whole or part of a pool business, a construction company, a real estate concern, and a boat business, filed for personal bankruptcy under Chapter 11. He identified Contractors Supply, Inc. as one of his unsecured creditors in that proceeding. Prior to the bankruptcy filing, in 1987 and 1988, a partner in a local law firm wrote DeTemple four letters on behalf of Contractors Supply in an attempt to collect a debt that DeTemple owed the Company. In July 1990, that partner, Frederick P. Stamp, Jr., became a federal judge and severed all ties with the firm.
 

 Three years later, in September 1993, a grand jury issued a twenty-count indictment charging DeTemple with arson, mail fraud, and bankruptcy fraud relating in part to his personal bankruptcy. DeTemple’s case was assigned to Judge Stamp, who appointed counsel for DeTemple under the Criminal Justice Act.
 

 In the period leading up to the trial, De-Temple asserted conflicts that led the United States Attorney and three Assistant United States Attorneys to disqualify themselves from participation in his case. In addition, two attorneys that the court had appointed to represent DeTemple withdrew from the case due to conflicts of interest. Then, on August 19,1994, in response to Government motions, a magistrate judge issued a report recommending that DeTemple no longer be afford
 
 *283
 
 ed court-appointed counsel. DeTemple moved to recuse the magistrate judge who had issued the report; and the judge disqualified himself.
 

 On October 19, 1994, over DeTemple’s strong objection, Judge Stamp adopted the magistrate judge’s recommendation. Three months later, on January 20,1995, DeTemple moved to recuse Judge Stamp on the grounds that Judge Stamp was disqualified because of the Judge’s communications with the magistrate judge, because of the Judge’s previous representation of Contractors Supply and because one of the Judge’s law clerks (who had left in August 1994) had married the prosecutor. On February 15, Judge Stamp denied that motion in a written memorandum opinion. At the same time, in recognition of DeTemple’s recent filing for Chapter 7 bankruptcy, the Judge appointed counsel for DeTemple.
 

 Two days later, on February 17, DeTemple moved to recuse Judge Stamp on the additional grounds that his former partners had represented entities involved in DeTemple’s bankruptcy case and that Judge Stamp as-sertedly had improper communications with DeTemple’s new counsel. In light of these accusations, DeTemple’s new counsel moved to withdraw. On February 24, Judge Stamp again denied the recusal motion and also denied counsel’s motion to withdraw.
 

 DeTemple’s counsel did, however, finally withdraw upon being appointed as a state court judge, after which Judge Stamp appointed Donald J. Tennant to represent De-Temple. Relations between Tennant and DeTemple broke down after Tennant reported DeTemple’s theft of prosecution documents to the court. Both Tennant and De-Temple moved for Tennant’s withdrawal. DeTemple also moved yet again to recuse Judge Stamp, asserting the old grounds and additional grounds concerning the delay in appointment of counsel. Judge Stamp denied all motions.
 

 On the first day of trial, September 12, 1995, Tennant renewed his motion to withdraw and stated that he was unprepared to defend DeTemple. Judge Stamp again denied the motion and Tennant represented DeTemple at trial. The jury found DeTem-pie guilty on all counts. Post-trial, the Judge did permit Tennant to withdraw. To date, Judge Stamp has appointed (successively) four additional attorneys for DeTemple.
 

 II.
 

 DeTemple initially contends that Judge Stamp erred in refusing to recuse himself. Recusal is governed by 28 U.S.C. § 455, which provides in relevant part:
 

 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 

 (b) He shall also disqualify himself in the following circumstances:
 

 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 

 (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....
 

 28 U.S.C.A. § 455 (West 1993). We review a district judge’s refusal to recuse himself for abuse of discretion.
 
 See United States v. Gordon,
 
 61 F.3d 263, 267 (4th Cir.1995).
 

 DeTemple’s main arguments for recusal relate to work done by Judge Stamp and two other members of his firm before he became a judge. DeTemple claims that this work constitutes service “in” or “concerning” the “matter in controversy” in the criminal case against him, and that therefore § 455(b)(2) mandates Judge Stamp’s recusal. DeTemple also argues that because Judge Stamp as-sertedly gained “personal knowledge of disputed evidentiary facts concerning the proceeding” through his work at the firm, § 455(b)(1) obligates him to recuse himself. Finally, DeTemple argues that Judge Stamp’s “impartiality might reasonably be questioned” because of the work done at his firm, and so § 455(a) requires recusal as well.
 

 
 *284
 
 A.
 

 DeTemple’s central contention under § 455(b), which identifies specific circumstances that require recusal, focuses on Judge Stamp’s representation of Contractors Supply in its attempt to collect a debt owed by DeTemple. Contractors Supply, as noted above, was named as one of the unsecured creditors in DeTemple’s personal bankruptcy. DeTemple contends that Judge Stamp’s efforts on behalf of Contractors Supply twenty months prior to the institution of DeTem-ple’s bankruptcy action (and five years prior to his indictment) constituted service “as a lawyer in the matter in controversy” with respect to the bankruptcy fraud charges made against him. 28 U.S.C. § 455(b)(2).
 

 The bankruptcy fraud prosecution clearly implicated the interests of the bankruptcy creditors, including Contractors Supply. Had DeTemple’s bankruptcy fraud gone undiscovered, Contractors Supply would have been one of its victims.
 
 See United States v. Shadduck,
 
 112 F.3d 523, 531 (1st Cir.1997) (enhancement for crimes involving multiple victims applicable to bankruptcy fraud sentence because “the primary victims of a bankruptcy fraud, for the most part, are the individual creditors”);
 
 United States v. Walker,
 
 29 F.3d 908, 913 n. 3 (4th Cir.1994) (upholding application of multiple victim enhancement to bankruptcy fraud sentence). Thus, by fraudulently understating his assets, DeTemple arguably increased the chances that Contractors Supply would receive a smaller payment, or no payment at all, upon distribution.
 

 DeTemple contends that our decision in
 
 In re Rodgers,
 
 537 F.2d 1196 (4th Cir.1976), requires recusal in these circumstances. The defendants in that case were charged with using unlawful means to secure the passage of a bill in the state legislature.
 
 Id.
 
 at 1198. They moved for recusal of the trial judge because his former partner had represented a company in its own efforts to get the bill passed.
 
 Id.
 
 at 1197. The defendants planned to argue that their conduct was no more culpable than that of the company represented by the judge’s former law partner, and both the partner and the president of the company were expected to testify at trial.
 
 Id.
 
 at 1198. In holding recusal to be mandated under section 455(b)(2), we reasoned that
 

 the actual case before the court consists of more than the charges brought by the government. It also includes the defense asserted by the accused. Here, this defense, in part at least, will consist of matters in which the judge’s former partner served as lawyer.
 

 Id.
 
 at 1198.
 

 By contrast, in this case the Contractors Supply debt played no role in either the defense or the prosecution of DeTemple’s ease. The Government claims, and DeTem-ple does not deny, that the words “Contractors Supply” were never even mentioned at trial. Furthermore, no one from Contractors Supply or Judge Stamp’s former law firm testified at DeTemple’s trial. The connection between the Judge’s prior professional associations and the case before him is far more tenuous here than in Rodgers.
 

 DeTemple also relies on Preston
 
 v. United States,
 
 923 F.2d 731 (9th Cir.1991). There, the Ninth Circuit held that recusal was required where the judge’s former law firm represented a nonparty company that would have faced a potential claim for indemnification by the government if the government had been found liable in the case.
 
 Id.
 
 at 734-35. Contractors Supply, the client of Judge Stamp’s former firm, was similarly a nonparty to DeTemple’s prosecution, with financial interests implicated by the bankruptcy fraud charges against DeTemple. In
 
 Preston,
 
 however, the judge’s former firm had also represented the client in a state court action brought by the same plaintiff concerning the same events as those before the district court,and had even filed some papers on behalf of the client in the district court case itself.
 
 Id.
 
 at 734.
 

 Nothing suggests that this level of connection existed between Judge Stamp’s representation of Contractors Supply and the bankruptcy fraud case against DeTemple. The criminal indictment against DeTemple did not issue until September 1993. Judge Stamp wrote DeTemple the last letter concerning the Contractors Supply debt more than five years earlier, in March 1988. Fur
 
 *285
 
 thermore, DeTemple did not file for personal bankruptcy (in which Judge Stamp did
 
 not
 
 represent Contractors Supply) until November 1989. These facts simply do not support the conclusion that Judge Stamp served as a lawyer “in the matter in controversy” in the criminal action against DeTemple.
 

 Cases involving claims for recusal of bankruptcy judges because of prior representation of creditors support this conclusion. Those cases hold that a judge must disqualify himself from hearing the entire case only when the role of the creditor in question is “substantial and ongoing”; otherwise, a judge should recuse himself only from the particular adversary proceedings that concern the creditors in question.
 
 See In re Apex Oil,
 
 981 F.2d 302, 304 (8th Cir.1992);
 
 In re Norton,
 
 119 B.R. 332, 340 (Bankr.N.D.Ga.1990). No evidence indicates that Contractors Supply played a “substantial and on going” role in DeTemple’s bankruptcy. Moreover, it played no role whatsoever in the bankruptcy fraud case against DeTemple; there was no “adversary proceeding” concerning Contractors Supply before Judge Stamp. Judge Stamp’s work on behalf of Contractors Supply therefore did not require him to recuse himself pursuant to § 455(b)(2).
 

 DeTemple argues that recusal was also required under § 455(b)(í) because Judge Stamp’s representation of Contractors Supply gave him “personal knowledge of disputed evidentiary facts concerning the proceeding.” DeTemple’s debt to Contractors Supply was not, however, a disputed eviden-tiary fact in the criminal trial. Despite De-Temple’s assertion to the contrary, Judge Stamp’s knowledge of that single debt did not put him on notice of DeTemple’s dire financial condition. Thus, § 455(b)(1) does not require disqualification of Judge Stamp based on his representation of Contractors Supply.
 

 DeTemple further contends that § 455(b)(2) required Judge Stamp to recuse himself because two lawyers at Judge Stamp’s former firm provided representation concerning the “matter in controversy.” The first of these lawyers, William D. Wilmoth, represented DeTemple’s ex-wife, Kathy Fry, in the DeTemples’ divorce proceedings during the time when Judge Stamp worked at the firm.
 
 [1]
 
 Fry testified at DeTemple’s criminal trial before Judge Stamp. DeTemple has not demonstrated, however, that this testimony made the divorce proceedings a “matter in controversy” in DeTemple’s trial. Judge Stamp’s refusal to recuse himself due to Wil-moth’s representation of Fry cannot be found to be an abuse of discretion.
 

 DeTemple’s final argument under § 455(b)(2) involves another of Judge Stamp’s former law partners, Teresa Rie-man-Camilletti. While she and Judge Stamp both worked at the firm, Rieman-Camilletti represented First National Bank of Wheeling in its sale of the so-called “River Road” property to DeTemple’s parents. The attempted arson of this property provided the basis for Count One of the indictment against DeTemple. DeTemple contends that, as the primary lienholder of the property, the bank would have received the insurance proceeds if the arson had gone as planned. Furthermore, the Government argued at trial that DeTemple’s parents were merely “straw purchasers” of the property on DeTemple’s behalf. For these reasons, unlike the other issues that DeTemple maintains to have been part of the “matter in controversy,” the particulars of the River Road sale did play a part in the criminal case against DeTemple.
 

 Nonetheless, DeTemple has failed to show that the sale of the River Road property concerned the case against him in more than a very tangential way. We note that the connection between Rieman-Camilletti’s representation of the bank—the only contact concerning a matter in controversy in De-Temple’s criminal case—is far more remote than the connection between the judge and the crime victim in
 
 United States v. Sellers,
 
 
 *286
 
 566 F.2d 884 (4th Cir.1977). The defendant there had been convicted of bank robbery, and sought a new trial based on the presiding judge’s failure to recuse himself.
 
 Id.
 
 at 885. We ruled that, even though the trial judge held stock in the holding company that owned the bank, and even though the judge’s brother was the bank’s chairman and chief executive officer, recusal under § 455 was not required.
 
 Id.
 
 at 886-87. In this case, Judge Stamp rightly concluded that “any connection between Rieman-Camilletti’s representation and the criminal matter was too attenuated to be considered the same matter in controversy.”
 
 See Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1,
 
 839 F.2d 1296, 1302 (8th Cir.1988) (issues in dispute must be “sufficiently related” to constitute parts of same matter in controversy);
 
 Dixie Carriers, Inc. v. Channel Fueling Service, Inc.,
 
 669 F.Supp. 150, 152 (E.D.Tex.1987) (that two suits might have some facts in common not controlling on whether they qualify as same matter in controversy).
 

 DeTemple’s other contentions under § 455(b) are too vague, tenuous, or speculative to establish a violation. We thus conclude that Judge Stamp did not abuse his discretion by declining to recuse himself pursuant to § 455(b).
 

 B.
 

 Alternatively, DeTemple asserts that § 455(a) obligates Judge Stamp to recuse himself. He grounds this contention on the specific issues addressed above in the context of § 455(b). DeTemple maintains that even if these facts do not require disqualification under § 455(b), they do provide reason to believe that the Judge’s “impartiality might reasonably be questioned,” such that recusal under § 455(a) was required.
 
 [2]
 

 Section 455(a) provides that a judge or justice
 
 “shall
 
 disqualify himself in any proceeding in which his impartiality
 
 might
 
 reasonably be questioned.” 28 U.S.C.A. § 455(a) (emphasis added). The critical question presented by this statute “is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.”
 
 Hathcock v. Navistar Int’l Transp. Corp.,
 
 53 F.3d 36, 41 (4th Cir.1995);
 
 Aiken County v. BSP Division of Envirotech Corp.,
 
 866 F.2d 661, 679 (4th Cir.1989). In sum, § 455(a) forbids more than
 
 actual
 
 bias. Obviously, it is possible for facts to indicate that a judge
 
 might
 
 be biased such that recusal is required under § 455(a) even though none of those facts indicates actual bias necessitating recu-sal under § 455(b). But whether that has happened here is another matter.
 

 Congress revised the disqualification statute in 1974 and instituted an objective standard in § 455(a) to replace the old subjective standard.
 
 Compare
 
 28 U.S.C. § 455(a) (“Any justice, judge, or magistrate ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.”)
 
 with
 
 28 U.S.C. § 455 (1970 ed.)(“Any justice or judge shall disqualify himself in any case in which he ... is so related to or connected with any party or his attorney as to render it improper,
 
 in his opinion,
 
 for him to sit on the ... proceeding therein.” (emphasis added));
 
 see Liljeberg v. Health Services Acquisition Corp.,
 
 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). This objective standard asks whether the judge’s impartiality might be questioned by a reasonable, well-informed observer who assesses “all the facts and circumstances.”
 
 Sellers,
 
 566 F.2d at 887 (quoting H.R.Rep. No. 93-1453 (1974),
 
 reprinted in
 
 1974 U.S.C.C.A.N. 6351, 6355).
 

 This standard abolishes the rule that courts should resolve close questions of dis
 
 *287
 
 qualification in favor of a judge’s so-called “duty to sit,” see H.R. Rep. 93-1453 (1974),
 
 reprinted in
 
 1974 U.S.C.C.A.N. 6351, 6355, but it does not require a judge to recuse himself because of “unsupported, irrational, or highly tenuous speculation,”
 
 In re United States,
 
 666 F.2d 690, 694 (1st Cir.1981). To disqualify oneself in such circumstances would be to set “the price of maintaining the purity of appearance” too high — it would allow litigants “to exercise a negative veto over the assignment of judges.”
 
 Id.
 
 Congress never intended the disqualification statute to yield this result.
 
 See
 
 H.R.Rep. No. 93-1453 (1974),
 
 reprinted in
 
 1974 U.S.C.C.A.N. 6351, 6355 (“Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.”).
 

 Application of the objective standard thus requires a nuanced approach. On the one hand, we must keep in mind that the hypothetical reasonable observer is not the judge himself or a judicial colleague but a person outside the judicial system. Judges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would. On the other hand, a reasonable outside observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased. There is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than “trivial.”
 
 In the Matter of Mason,
 
 916 F.2d 384, 386 (7th Cir.1990).
 

 We believe that a reasonable outside observer, aware of all the facts and circumstances of this case, would not question Judge Stamp’s impartiality. To be sure, De-Temple has amassed quite a list of allegedly disqualifying conflicts. But an observer, cognizant of all relevant information, would know that these multiple contentions not only lack a factual basis demonstrating impropriety, but also fail to create even the appearance of bias.
 

 For example, although DeTemple’s strongest contention — that Judge Stamp once represented a victim of DeTemple’s bankruptcy fraud (Contractors Supply) and wrote De-Temple four dunning letters — initially appears to raise a difficulty, examination of all of the facts and circumstances ultimately renders even this apparent conflict entirely benign. Judge Stamp last represented Contractors Supply almost two years before De-Temple filed for personal bankruptcy and five years prior to his indictment. No party disputed the debt to Contractors Supply at DeTemple’s criminal trial; indeed, neither the debt nor Contractors Supply was even mentioned at that trial.
 

 Furthermore, a reasonable observer would know that the site of this case— Wheeling, West Virginia — has a population of only about 32,000, with fewer than 300 lawyers and one federal district judge. It is far more likely in these circumstances than it would be in a metropolitan area, that a judge, prior to his appointment, might represent a party with some tangential connection to a case subsequently assigned to him. As Justice (then Judge) Breyer, noted in another § 455(a) case “other things being equal, the more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality.”
 
 In re Allied-Signal Inc.,
 
 891 F.2d 967, 971 (1st Cir.1989). We do not suggest that litigants in less populated areas must tolerate a greater risk of bias than litigants in urban centers. But where, as here, the mere appearance of impartiality is at issue, the likelihood that a given fact will create such an appearance must depend to some extent on how commonly facts of that kind arise.
 

 Even if all of the alleged conflicts raised by DeTemple are considered in the aggregate, they fail to provide a basis for questioning Judge Stamp’s impartiality. Contrary to the Government’s contention, it is certainly possible for a confluence of facts to create a reason for questioning a judge’s impartiality, even though none of those facts,in isolation, necessitates recusal under § 455(a). We have recently so held.
 
 See Hathcock,
 
 53 F.3d at 41. In the case at
 
 *288
 
 hand, however, although DeTemple has amassed a string of objections, each of them when viewed with full knowledge of the facts is so weak that even taken together they amount, at best, to only a trivial risk of bias.
 
 See Mason,
 
 916 F.2d at 386. Indeed, any reasonable observer familiar with the facts of this case would recognize that the number of reasons DeTemple asserts as a basis for recusal reflects his ingenuity in finding conflicts around every corner rather than the merit of his claim. Accordingly, Judge Stamp did not err in refusing to grant De-Temple’s motions for recusal.
 

 III.
 

 DeTemple next contends that the district court erred by denying him appointed counsel for six months during the pretrial period. He argues that because the magistrate judge used the wrong legal standard and made erroneous factual determinations in recommending that he was ineligible for appointed counsel, the district court’s adoption of that recommendation constituted error.
 

 We review both a district court’s decision regarding appointment of counsel and its adoption of factual findings made by a magistrate judge for clear error.
 
 See United States v. Sarsoun,
 
 834 F.2d 1358, 1361-62 (7th Cir.1987) (appointment of counsel);
 
 United States v. Clark,
 
 865 F.2d 1433, 1438 (4th Cir.1989) (findings of magistrate judge).
 

 The district court recognized that the magistrate judge incorrectly stated that a defendant must demonstrate indigency in order to be entitled to appointed counsel and that the correct standard requires a defendant to prove merely an inability to afford counsel.
 
 See United States v. Davis,
 
 958 F.2d 47, 48 (4th Cir.1992). The district court concluded, however, that “the magistrate judge’s findings of fact demonstrate that the same conclusion would be reached under the [proper] inability to afford counsel standard.” The district court similarly recognized that the magistrate judge erred in his valuation of DeTemple’s assets, but found that these errors did not affect the propriety of the magistrate judge’s conclusion that DeTemple was ineligible for court-appointed counsel.
 

 The district court hence considered both of the mistakes alleged by DeTemple and found both to be immaterial in light of the court’s own assessment of the evidence. DeTemple has failed to show that the court committed clear error in its evaluation of the magistrate judge’s report and recommendation.
 

 IV.
 

 DeTemple also maintains that the district court erred by refusing to allow his fourth court-appointed attorney, Donald J. Tennant, Jr., to withdraw and by refusing to appoint new counsel to replace Tennant. We review this decision for abuse of discretion.
 
 See United States v. Mullen,
 
 32 F.3d 891, 895 (4th Cir.1994).
 

 Three factors determine whether a district court abused its discretion in denying a request for substitution of counsel: “[t]ime-liness of the motion; adequacy of the court’s inquiry into the defendant’s complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense.”
 
 Id.; United States v. Gallop,
 
 838 F.2d 105, 108 (4th Cir.1988).
 

 Although the Government effectively concedes that the motion was timely, the district court’s inquiry, over several hearings, was clearly adequate. Thus, the remaining question — whether the conflict between De-Temple and Tennant became so great that it resulted in a total lack of communication preventing an adequate defense — is determinative here.
 

 As in
 
 Mullen,
 
 the defendant (here DeTem-ple) and his lawyer “had no contact whatsoever” for some time prior to trial. 32 F.3d at 896. But while in
 
 Mullen
 
 this lack of communication continued throughout the trial, here it did not. Rather, immediately after the district court denied the motion to withdraw (and prior to jury selection) DeTemple told Tennant, “Now let’s fight the Government,” They proceeded to join forces and do precisely this. Indeed, the record reflects that DeTemple consulted with Tennant on more than forty occasions during the trial. A total lack of communication simply does
 
 *289
 
 not exist where the attorney and the client communicate significantly during trial.
 
 See United States v. Hanley,
 
 974 F.2d 14, 17 (4th Cir.1992);
 
 Gallop,
 
 838 F.2d at 109.
 

 Furthermore, and again unlike
 
 Mullen,
 
 DeTemple’s own conduct caused the initial lack of communication. DeTemple’s theft of prosecution documents and Tennant’s report of that theft created the rift between lawyer and client. A court can properly refuse a request for substitution of counsel when the defendant’s own behavior creates the problem.
 
 See United States v. Morsley,
 
 64 F.3d 907, 918 (4th Cir.1995).
 

 For these reasons, the district court did not abuse its discretion in refusing to permit Tennant to withdraw.
 

 V.
 

 Finally, DeTemple asserts that Ten-nant’s representation constituted ineffective assistance of counsel. Ineffective assistance claims involve mixed questions of law and fact, and therefore we owe “no special deference” to the district court’s findings with respect to such claims.
 
 Matthews v. Evatt,
 
 105 F.3d 907, 919 (4th Cir.),
 
 cert. denied,
 
 — U.S. -, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997).
 

 A defendant claiming ineffective assistance of counsel must show that “counsel’s representation fell below an objective standard of reasonableness” and that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Strickland v. Washington,
 
 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, 694 (1984).
 

 DeTemple maintains that he was denied effective assistance of counsel because on the first day of trial Tennant sought to withdraw from the case and stated that he was completely unprepared to present a defense. DeTemple further argues that Ten-nant was in fact unprepared, contending that as of the first day of trial Tennant had failed to interview witnesses, retain expert witnesses, identify exhibits for introduction at trial, or review certain materials that De-Temple had given him. Acts of negligence like these have repeatedly been held to justify findings of ineffective assistance.
 
 See, e.g., Griffin v. Warden,
 
 970 F.2d 1355 (4th Cir. 1992) (in action pretrial resulting in failure to present exculpatory evidence);
 
 United States v. Gray,
 
 878 F.2d 702(3rd Cir.1992) (failure to investigate);
 
 Williams v. Washington,
 
 59 F.3d 673, 680-81 (7th Cir.1995) (failure to review discovery materials, failure to prepare for trial).
 

 The record indicates, however, that Ten-nant understated his readiness on the first day of trial and that he worked with great effectiveness and speed once trial began. For example, prior to trial, Tennant engaged in substantial preparation by reviewing and organizing 15-20 boxes of materials pertaining to the case. Moreover, during the trial, Tennant hired a private investigator, thoroughly investigated DeTemple’s case, and filed numerous pleadings and motions, including five motions in limine. Tennant effectively cross-examined numerous Government witnesses and presented over
 
 thirty
 
 defense witnesses and numerous exhibits. Tennant’s representation of DeTemple did not fall below an objective standard of reasonableness; indeed, he conducted an able and vigorous defense. We thus conclude that DeTemple was not denied effective assistance of counsel.
 

 AFFIRMED.
 

 [1]
 

 . In addition, DeTemple maintains that because Wilmoth represented Outboard Marine Corp., one of the creditors victimized by DeTemple’s bankruptcy fraud, Judge Stamp should have re-cused himself. This argument fails because it lacks support in the record, because DeTemple did not raise it in a timely fashion, and because this debt, like the Contractors Supply debt, was never an issue in dispute at DeTemple’s criminal trial.
 

 [2]
 

 . DeTemple also maintains that the marriage of one of the Judge’s law clerks to the prosecutor in this case provides a basis for recusal under § 455(a). Judge Stamp reasonably concluded that the marriage, which took place a month after DeTemple's initial indictment and almost two years prior to his criminal trial, involving a clerk, who the Judge took pains to see did not work on DeTemple’s case, did not mandate the Judge’s recusal on any ground.
 
 See Hunt v. American Bank & Trust Co.,
 
 783 F.2d 1011, 1015-16 (11th Cir.1986) (clerk’s conflict of interest requires disqualification of clerk not judge). Judge Stamp thus did not abuse his discretion in declining to recuse himself based on the marriage of his clerk.