**BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, Plaintiff,**

v.

**DELTA DENTAL OF RHODE ISLAND, Defendant.**

**No. CIV.A. 02–277S.**

United States District Court, D. Rhode Island.

Feb. 26, 2003.

**40**

Steven E. Snow, Robert K. Taylor, Partridge, Snow & Hahn LLP, Providence, RI, for Plaintiff.

William R. Landry, Blish & Cavanagh, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

SMITH, District Judge.

Plaintiff Blue Cross & Blue Shield of Rhode Island ("Blue Cross") has moved to disqualify the undersigned Judge from presiding over this action pursuant to 28 U.S.C. § 455(b)(2). Blue Cross asserts that two attorneys with whom this Judge was previously associated in the law firm of Edwards & Angell, LLP ("E & A") represented Delta Dental before the Rhode Island Department of Business Regulation ("DBR"), allegedly in connection with "this matter," and may be "material witnesses" to certain aspects of the case. Blue Cross takes pains to state that it "does not question the actual impartiality of Judge Smith, and does not suggest any personal bias or prejudice on his part." Plaintiff's Memorandum of Law in Support of Motion to Disqualify Pursuant to 28 U.S.C. 455(b)(2) ("Pl's.Mem.") at 3.

Defendant, Delta Dental Corporation of Rhode Island ("Delta Dental"), objects to Blue Cross' Motion to Disqualify. Delta Dental states that it "strongly agrees with Blue Cross that Judge William Smith's impartiality should not be questioned in this matter." Defendant's Objection to Plaintiff's Motion to Disqualify ("Def's.Obj.") at 1. Moreover, both parties state, correctly, that there is no reason to believe that this Judge was ever aware of E & A's representation of Delta Dental. Delta Dental vigorously disputes the allegations made by Blue Cross with respect to the legal work performed by E & A attorneys James R. McGuirk and Barry G. Hittner [1] on behalf of Delta Dental.

---

**1.** It should be noted that as of January 2003, Barry G. Hittner left Edwards & Angell and is now associated with the law firm of Cameron & Mittleman, LLP.

This Court has reviewed the Memoranda supplied by the parties, and conducted its own research regarding the interpretation of § 455(b)(2). On the basis of this review, for the reasons outlined in detail below, the motion of Blue Cross to disqualify the undersigned from presiding over this action is denied.

**Background**

The dispute in this case revolves around an agreement between Blue Cross and the Rhode Island Interlocal Risk Management Trust (the "Trust"),[2] and Delta Dental's reaction to that agreement. The gravamen of Blue Cross' dispute with Delta Dental is described in paragraph 8 of its Complaint, which states as follows:

> Delta Dental has continued this pattern of unlawful activity in 2002 by making false, misleading, and objectively baseless allegations about Blue Cross' recent Administrative Services Agreement (the "Agreement") with the Rhode Island Interlocal Risk Management Trust (the "Trust"). The Trust is a non-profit corporation authorized by state law to develop and administer local government insurance pools for the purpose of distributing risk and enhancing local government's purchasing power. On or about June 7, 2002, Delta Dental initiated a public relations and media campaign to distort the terms of the Agreement and deter Rhode Island municipalities from participating in a health insurance purchasing group that is expected to produce substantial savings for group members. A direct effect of Delta Dental's conduct will be a reduction in the number of Rhode Island municipali-

ties offering dental insurance from Blue Cross, and a perpetuation of Delta Dental's dominant position in the market. Deltal [sic] Dental's effort to portray its allegations about the Agreement as petitioning activity is a sham and a pretence.

Blue Cross contends that Mr. McGuirk and Mr. Hittner were retained by Delta Dental in connection with the complaints Delta Dental made to the DBR[3] about the Blue Cross agreement with the Trust.

Blue Cross admits that it is "not cognizant of all of the activities engaged in by Edwards & Angell lawyers in connection with this matter" but believes that it is nevertheless "beyond dispute" that they served as attorneys for Delta Dental "in this matter." (Pl's. Mem. at 3.) To support this sweeping conclusion, Blue Cross appears to rely entirely upon inferences drawn from a letter dated June 11, 2002, from William R. Landry, Esq. to Marilyn Shannon McConaghy, the Director of the DBR, which indicates that Mr. McGuirk was present at a meeting with the Director.

Delta Dental contends that the work performed by Messrs. McGuirk and Hittner on its behalf at best was incidental to the case before the Court. Specifically, Delta Dental states that Mr. McGuirk was present at one meeting with the Director which occurred prior to the filing of this action (the meeting referred to in Mr. Landry's letter). Further, Delta Dental avers that Mr. Hittner, who was Director of DBR from 1995 to 1999, specifically declined to attend the meeting with DBR on behalf of Delta Dental because of his

---

2. The Trust is a non-profit, state chartered insurance risk management organization through which many Rhode Island municipalities obtain their liability insurance coverage, effectively pooling their risk, and increasing their purchasing power.

3. DBR is the state government agency that, among other things, regulates the conduct of insurance providers doing business in Rhode Island.

past service as Director. Delta Dental represents that, to its knowledge, no attorney from E & A has been involved in any way in the present case in U.S. District Court, nor has any E & A attorney even seen the pleadings involved in this suit.

The question for this Court then is whether the presence of Mr. McGuirk at the meeting with the DBR Director, as part of a delegation of representatives from Delta Dental, during which Delta Dental expressed its complaints about Blue Cross' agreement with the Trust, constitutes "serving" as an attorney "in the matter in controversy," and/or makes Mr. McGuirk a material witness in the matter.

### Discussion

Both parties acknowledge that this case is not a typical disqualification motion. Usually, motions to recuse are brought pursuant to 28 U.S.C. § 455(a) which provides that a judge must recuse himself or herself "in any proceeding in which his [or her] impartiality might reasonably be questioned." There is considerable case law in the First Circuit and elsewhere discussing this statute, the most recent being Senior Judge Lagueux's comprehensive and instructive opinion in *Obert v. Republic W. Ins. Co.*, 190 F.Supp.2d 279 (D.R.I.2002). As Judge Lagueux pointed out in *Obert*,

> The statute only mandates disqualification when the situation is such that the judge's impartiality can reasonably be questioned. The test for disqualification is objective, not subjective. It only mat-

ters whether the judge reasonably appears to be biased.

*Obert*, 190 F.Supp.2d at 284 (citing *Liteky v. U.S.*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)(internal citation omitted)).

In contrast to the typical motion to disqualify under § 455(a),[4] the present motion is brought under § 455(b) which provides, in pertinent part, as follows:

> [Any justice, judge, or magistrate of the United States] shall also disqualify himself in the following circumstances:
>
> . . . .
>
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . .

Blue Cross argues that because Mr. McGuirk was present at the above referenced meeting, he was engaged as an attorney in "the matter in controversy;" further, it contends that Mr. McGuirk is likely to be a material witness in the case and will certainly be deposed.[5]

Delta Dental counters that neither Mr. McGuirk nor Mr. Hittner has served as its lawyer in this lawsuit or is a "material witness." Delta Dental suggests that Mr. McGuirk's "incidental presence" at one meeting with DBR does not constitute acting as "a lawyer concerning the matter" so

**4.** Both parties have strenuously acknowledged that they are not questioning the impartiality of this writer, nor is there any suggestion that there is a reasonable appearance of bias. Therefore, § 455(a) is not an issue. As will be discussed below, however, some discussion of § 455(a) is important to understand how § 455(b)(2) should be applied.

**5.** It is unclear from Blue Cross' motion papers what involvement it believes Mr. Hittner

had in any of these activities. Delta Dental represents that Mr. Hittner eschewed any involvement because of his former position as DBR Director. Blue Cross provides no information to the contrary. For purposes of this motion the Court can consider only the information that it has before it, which indicates that Mr. Hittner had no involvement with the DBR meeting that precipitated this motion.

as to trigger the recusal requirement of § 455(b)(2). It further argues that it is virtually certain that neither Mr. McGuirk nor Mr. Hittner will be needed as witnesses in the case. At most, Mr. McGuirk could be called as a witness to impeach the testimony of Joseph Nagle (the President and Chief Executive Officer of Delta Dental) concerning his recollection of the meeting with the DBR Director. While possible, this is not probable.

Blue Cross correctly points out that there is scant case law interpreting § 455(b)(2), and none from the First Circuit. Those courts that have interpreted this section have widely divergent views with respect to its meaning and application.

In support of its motion, Blue Cross relies primarily on the decisions of the Fourth Circuit Court of Appeals in *In re Rodgers*, 537 F.2d 1196 (4th Cir.1976), and the Ninth Circuit Court of Appeals in *Preston v. U.S.*, 923 F.2d 731 (9th Cir. 1991).

In *In re Rodgers*, defendants were charged with using unlawful means to secure passage of a bill in the Maryland state legislature. They moved for recusal of the trial judge based on the fact that the judge had formerly practiced law with, and for a time represented, another company that was engaged in efforts to get the same legislation passed. The defendants expected to argue that their conduct was no more culpable than that of the company represented by the judge's former partner. The Fourth Circuit pointed out that the former law partner and his client "will undoubtedly testify about the events that took place before the judge withdrew from his law firm." 537 F.2d at 1198. The court rejected the government's argument that the terms "matter" and "matter in

controversy" should be construed to mean the actual case before the court. It stated, however, that even if the government's reading of the statute were correct, the judge nevertheless would be required to recuse:

> This is so because the actual case before the court consists of more than the charges brought by the government. It also includes the defense asserted by the accused. Here, this defense, in part at least, will consist of evidence of matters in which the judge's former partner served as a lawyer.

*Id.*

In *Preston, supra,* the Ninth Circuit considered the question of whether the district judge should have been disqualified from presiding over an action brought by the heirs of a decedent against the federal government pursuant to the Federal Torts Claims Act.[6] The heirs contended that the district court judge should have recused himself because, prior to being appointed to the federal bench, the judge was "of counsel" to the law firm of Latham & Watkins. This firm represented the Hughes Aircraft Company ("Hughes") which was the employer of the decedent at the time of his death. Although Hughes was never a party to the litigation before the judge, had judgment been rendered in favor of the decedent and against the government, a claim for indemnification against Hughes would certainly have been triggered under a contract between Hughes and the government.

The Ninth Circuit found that the district court judge was required to recuse himself under § 455(b)(2). Critical to the court's decision was the fact that not only was the district judge affiliated with the Latham & Watkins firm during the commencement of

---

**6.** The decision of the district court not to recuse was made by a different district judge than the judge to whom the recusal motion was directed.

the wrongful death action against the government, but also that the firm had represented Hughes in a state court action involving the decedent's death, *and*

> [f]urther, in the *present action* which was filed in December 1985, Latham & Watkins represented Hughes by (1) filing Hughes' objections to a subpoena and its designation of witnesses for a deposition, (2) representing Hughes during deposition proceedings, and (3) submitting an affidavit of a Latham & Watkins partner for the government's use in opposing the heirs' motion for an order extending discovery cutoff and rescheduling a pretrial conference.[7]

923 F.2d at 734 (emphasis added).

The Ninth Circuit pointed out that it is "irrelevant that Latham & Watkins' client, Hughes, was not a named party to the suit before [the district judge]." *Id.* at 734–35. Rather, the court noted that "the focus has consistently been on the question whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public."[8] *Id.* at 735. The court concluded that given the contacts

between the Latham & Watkins firm and the case before the judge, as well as the clear connection between the indemnification clause contained in the Hughes contract and a potential finding against the government, recusal was required.[9]

A more restrained view was expressed by the Eighth Circuit in *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 839 F.2d 1296 (8th Cir.1988). In *Little Rock*, as Blue Cross points out, the district judge's former law partner had participated as one of the *amici curiae* in a severed, but closely related case to the one before the court.[10] The Eighth Circuit held that the district court judge did not err in refusing to disqualify himself because of his former partner's involvement in an earlier case which was closely related and historically connected to the case before him. The Eighth Circuit took a restrictive view of the term "matter in controversy," limiting it to proceedings conducted under the docket number of the case before the court. The court appeared to reject any interpretation of the "matter in controversy" terminology that would "extend beyond the litigation conducted under the same docket number

---

**7.** These facts, as recited by the Ninth Circuit, appear crucial to its holding. They were not mentioned in Blue Cross' discussion of the case.

**8.** This statement by the court actually reflects the standard set forth in § 455(a), not § 455(b)(2). As discussed above, recusal under § 455(b)(2) is automatic; it does not hinge on whether there is a risk that the public might reasonably question the impartiality of the trial judge. Given the court's confusion of the two sections in its analysis, this decision is of little help in determining the appropriate application of § 455(b)(2).

**9.** Another case cited by Blue Cross in support of its motion is *Dixie Carriers, Inc. v. Channel Fueling Serv., Inc.*, 669 F.Supp. 150 (E.D.Tex. 1987). While it is correct that the trial judge recused himself in this case, he did so only

after making it very clear on the record that he did not believe that he was required to do so under § 455(b)(2). In this case, the judge's former partner represented the defendants in a separate state court fraud action which had facts in common with the case before the court. The state case did not, in the court's view, involve the "same matter in controversy." The district judge recused himself in order to avoid any appearance of impropriety, effectively a § 455(a)-based decision.

**10.** *Little Rock School District* is one of a series of cases involving intradistrict segregation in the school districts of Arkansas. The case in which the judge's former partner had participated as an *amicus*, known as the *Clark* litigation, was one of the early such cases filed in the 1960s. It formed a part of the "historical background" of the dispute in *Little Rock*.

where the issues in dispute are sufficiently related." *Little Rock Sch. Dist.*, 839 F.2d at 1302.[11] *See also Patterson v. Masem*, 774 F.2d 251, 254 n. 2 (8th Cir.1985); *Veneklase v. City of Fargo*, 236 F.3d 899 (8th Cir.2000) (Circuit Judge refusal to recuse under § 455(b)(2) from sitting in *en banc* consideration of case.)

In *U.S. v. Cleveland*, 1997 WL 222533(E.D.La.1997), a district court judge considered the question of whether he was required to disqualify himself under § 455(b)(2) because of the involvement of attorneys from his former firm in a civil matter involving a company substantially owned by the defendant in the case before him. The court held that this limited engagement was sufficiently unrelated to the case before him to trigger the application of § 455(b)(2). In its analysis of the case law, the court noted with approval the Eighth Circuit's narrow reading of § 455(b), and went on to hold that if the Eighth Circuit's narrow view of the term "matter in controversy" did not control, then the question became one of degree.

> In this Court's view, a former representation should trigger the "matter in controversy" requirement if the issues with which it dealt are put "in issue" in the subsequent case in the sense that they need to be resolved by the judge who is presiding over the subsequent case. If the judge need not resolve an issue that either she or her former partners were involved in, then there is no appearance of impartiality and the purpose of Section 455(b)(2) is satisfied.

*Id.* at *11. The court went on to find that because the issue involved in his former law firm's representation of the company controlled by the defendant was sufficiently unrelated to the issue before him, recusal was not required.

The case law discussed above does not lead to an obvious resolution of the motion before the Court. If this Court were to adopt the broad reading set forth in *In re Rodgers* and *Preston*, then recusal arguably would be required. These cases imply that the Court should look well beyond the four corners of the actual case before the Court to examine the actual potential for bias or perception of bias resulting from the relationship. Yet both of those cases involved situations where a real, discernable conflict of interest could have resulted by virtue of the judge's continued involvement in the matter. In *In re Rodgers*, the judge's former partner and his client were "undoubtedly" going to be witnesses in the defense of criminal charges against the defendant. *In re Rodgers*, 537 F.2d at 1198. The partner and his client would essentially be testifying about their work in an attempt to secure passage of legislation. Had the judge retained the case, he would have been put in the untenable position of presiding over a trial where the center piece of the defense would be the actions of his former law partner's client, and probably the legal advice given by his former partner (while the judge was in the firm), all in connection with a criminal case. The conflict inherent in this scenario cries out for recusal. And, as discussed above, while the Fourth Circuit used § 455(b)(2) as the basis for its ruling, the analysis of the con-

---

11. Blue Cross correctly points out that the court in *Little Rock* was significantly influenced by the passage of time (twenty years) between the work performed by the judge's former law partner and the case before the court. However, § 455(b)(2) does not speak in terms of time frames. Thus, while the Eighth Circuit did refer to the passage of time as a factor, this is not a distinction that is grounded in the plain language of the statute. To the extent that this factor influenced the court, it is an influence that would seem more appropriate to a § 455(a) analysis of whether one could reasonably question the judge's impartiality.

flict presented was actually more appropriate to § 455(a).

In *Preston*, a judgment for the decedent would have certainly triggered a massive suit for indemnification between the government and Hughes, the company represented by the judge's former firm. Moreover, the judge's former firm was already actively engaged in the matter before him because of its representation of Hughes in discovery proceedings in that very case. To the extent that the judge's former colleague was actively engaged in the discovery phase of the case before him, this would arguably trigger automatic disqualification under § 455(b)(2). As pointed out above, however, the court appeared to be far more concerned with the perception of impartiality if the judge retained the case which, as in *In re Rodgers*, is a § 455(a)-centered analysis.

The question of disqualification because of the previous activities of a judge or his former colleagues can and should be analyzed under both sub-sections (a) and (b) of § 455. This analysis should be precise, however, and true to the actual language and structure of § 455. *In Re Rodgers, Preston*, and even *U.S. v. Cleveland*, all appear to be decided under § 455(b)(2), but rely entirely on § 455(a)-based analysis in reaching their conclusions. Therefore, because this Court does not believe these cases provide a well grounded approach to the application of § 455(b)(2), it will decline to follow them.

■ This Court holds that the term "matter in controversy" as set forth in § 455(b)(2) should be given a restrictive reading; that is, it should be read as applying only to the case that is before the Court as defined by the docket number attached to that case and the pleadings contained therein (the answer and any third party pleadings that may be filed in the case, for example). This is, essentially, the interpretation given to § 455(b)(2) by the Eighth Circuit Court of Appeals in the cases discussed above. If the judge, while in practice, or an attorney with whom he or she was associated in practice, served as a lawyer in the matter in controversy, as so defined, the judge is required to recuse himself or herself regardless of whether the judge is actually biased or whether there is a reasonable perception of impartiality.[12]

■ Second, if the judge, or an attorney with whom he or she was formerly associated in practice, has been a *material* witness in the case (which would imply, therefore, a strong likelihood of being called to testify as a *material* witness) then recusal would also be automatic. This restrained reading of the term "matter in controversy" is consistent with the plain language of the statute, and the practical realities within which lawyers practice law and judicial officers administer justice.

Of course, this restrictive application of the automatic recusal requirement of § 455(b)(2) does not exist in isolation. Questions of recusal must also be considered in light of the broader mandate of § 455(a) which requires a judicial officer to recuse "in any proceeding in which his impartiality might reasonably be questioned." In this writer's view, the restrictive application of § 455(b)(2), combined with the thoughtful, objective application

12. Following this guideline, this writer has recused from numerous cases, including, very recently, *Am. Cyanamid Co. v. 3M Corp.*, Docket No. C.A. 99–472. The recusal in this case is instructive because it involved a very limited amount of work performed by an E & A partner (who has since withdrawn from the case) several years ago on the case before the Court. This writer chose to recuse because the work performed involved review of the original Complaint that initiated the suit, and in spite of the fact that attorneys for all sides advocated against recusal.

of § 455(a), achieves the appropriate balance of interests called for by the statute and Canon 3C of the Code of Conduct for United States Judges. Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures*, Judicial Code of Conduct, Canon 3(C), pp. II–4, 5 (1999).

Returning to the issue before this Court, then, the question is whether the presence of Mr. McGuirk at the meeting with the DBR Director on behalf of Delta Dental should require disqualification under § 455(b). Stated in terms of § 455(b)(2), the question is whether Mr. McGuirk "served" as a lawyer in the "matter in controversy," or "has been a *material* witness concerning [the matter]." 28 U.S.C. § 455(b)(2) (emphasis supplied). Delta Dental readily admits that it has utilized E & A for unrelated legal work in the past and that Mr. McGuirk attended the meeting with the DBR Director. Even accepting all of this as true, it is clear to this Court that these limited activities do not constitute "serv[ing] as a lawyer" in the "matter in controversy" as defined above. No E & A attorneys have entered an appearance in this case, or viewed the pleadings or advised on legal theories. Further, even if Mr. McGuirk were to be a witness, he would not be a material one, based on the information thus far presented.

If this Court were to accept the reading of § 455(b)(2) suggested by Blue Cross, the precedential impact on this Judge and the other judges in this District would be substantial. Such a reading of § 455(b)(2) would appear to be a pointless exercise in elevating form over substance particularly where neither party has suggested that there is any question that this writer can serve impartially and fairly in this case. If the Motion to Disqualify were granted on the basis suggested by Blue Cross, the time invested on this case to date would be wasted; the dockets of other judges in the District would be disrupted; other parties in other cases would be affected as a result of the transfer of this case back to the docket of Chief Judge Torres and the reciprocal transfer of another case to take its place on this Court's docket. In addition, future litigants appearing before this Court may well view potential recusal on the basis of similar attenuated connections between attorneys from E & A and the matter before the Court as an opportunity to "judge shop" within the District.[13] This Court sees absolutely no practical benefit to litigants, the judges of this court, or the administration of justice to be served by such an interpretation of § 455(b)(2).

Applying the reading of § 455(b)(2) set forth above to the facts of this case results in the unmistakable conclusion that the Motion to Disqualify should be denied. Further, because both parties, and this Court, believe that there is no reason whatsoever to question the impartiality of this writer, there is no basis to disqualify under § 455(a).

Therefore, the Motion to Disqualify is DENIED.

---

13. It should be noted that this Judge has issued a standing order with the Clerk of the Court recusing on cases in which E & A has entered an appearance. Given the prominence of the firm, and the small size of our District, this order already substantially restricts the cases which are eligible to be assigned to this writer.