Opinion for the Court Fulton, Judge:
*1003 Five detainees, including petitioners Mustafa Ahmed Adam al Hawsawi, Ali Abdul Aziz Ali (also known as Ammar al Baluchi), and Khalid Shaikh Mohammad are being tried at Guantanamo Bay, Cuba, by the same military commission on charges related to their alleged roles in the attacks of September 11, 2001. Some of the charged offenses are capital.
Petitioner Al Baluchi filed a petition in CMCR Case No. 18-004 in which Petitioner Hawsawi joined. Petitioner Mohammad filed a petition in CMCR Case No. 19-001. Both petitions allege that the trial judge, Colonel Keith Parrella, U.S. Marine Corps, appears to be biased against them. Their petitions ask this Court to issue a writ of mandamus directing Judge Parrella to recuse himself. The government opposes the petitions. We find that the petitioners have not demonstrated an indisputable right to the writ and deny the petitions.
I. Procedural background
On August 27, 2018, the Chief Judge of the Military Commissions Trial Judiciary detailed Judge Parrella to serve as the military judge in the ongoing military commission case of United States v. Khalid Shaikh Mohammad, et al .[1] On September 10, 2018, the parties conducted an hours-long voir dire of the new judge.[2] The voir dire covered Judge Parrella's experience as a fellow at the Department of Justice's (DOJ) National Security Division; his relationship with Jeffrey Groharing, one of the prosecutors; and his interactions with intelligence and law enforcement agencies. The next day, Judge Parrella denied a combined defense motion for recusal made by four of the defendants, including Petitioners Ali and Mohammad.[3] On October 10, 2018, Judge Parrella issued a written ruling clarifying his oral ruling.[4] Petitioner Hawsawi did not join the initial recusal motion.[5] But nine days after Judge Parrella issued the written ruling, Hawsawi filed his own motion to recuse.[6] Judge Parrella *1004 denied the motion on November 19, 2018.[7]
On November 27, 2018, Petitioner Hawsawi filed this petition, asking us to issue a writ of mandamus ordering Judge Parrella to recuse himself. On January 31, 2019, we granted Petitioner Baluchi's motion to join Hawsawi's petition. On February 19, 2019, Petitioner Mohammad filed a petition in CMCR Case No. 19-001. These petitions argue that they are entitled to mandamus for three primary reasons:
(1) Judge Parrella's experience in the DOJ's National Security Division creates an apparent bias against the petitioners because he was essentially a lawyer "in the same 'firm' " as the prosecution;
(2) Judge Parrella has a personal relationship with Mr. Groharing, a Marine Corps reservist and one of the prosecutors on the case; and,
(3) Judge Parrella's experience with and "on-going obligations to" the FBI and CIA-agencies the petitioners claim have improperly interfered with this case-create actual or apparent bias.[8]
On April 25, 2019, Judge Parrella reconsidered his decision not to recuse himself in light of new precedent from the Court of Appeals for the District of Columbia Circuit. In In re Al-Nashiri , (another military commission presided over by a different judge) the Court of Appeals granted extraordinary relief because the military judge had been actively seeking employment from the DOJ while he presided over that petitioner's commission.[9] After considering In re Al-Nashiri , Judge Parrella continued to find that his recusal was not required.
II. Facts
A. Assignment to the DOJ's Counterterrorism Section[10]
According to a biography the military judge provided the parties after being detailed to the case, then-Lieutenant Colonel Parrella was selected in July, 2014, for the Commandant of the Marine Corps' Fellowship Program. As a fellow, Judge Parrella worked in the DOJ National Security Division (NSD) as a Counterterrorism Prosecutor. Among other functions, the NSD investigates and prosecutes domestic and international terrorism cases. The fellowship lasted for about one year. During this fellowship Judge Parrella served as co-counsel in more than one case, though he never appeared on the record. Judge Parrella reviewed search warrant applications and provided recommendations on the handling of cases. While detailed to the NSD's Counterterrorism Section, Judge Parrella worked with FBI agents and CIA employees. He had a security clearance and access to classified information on a need-to-know basis. He conducted document review on one occasion at a CIA facility and acknowledged that he continued to have an obligation to protect classified information that he learned in the course of the fellowship from improper disclosure. Judge Parrella did not work on any matter involving the September 11, 2001 attacks or any other military commission cases while an NSD fellow.
Although Judge Parrella did not work on any military commissions while an NSD fellow, other NSD attorneys have, both during Judge Parrella's fellowship *1005 and now. These prosecutors, who have been detailed to the DOD Office of the Chief Prosecutor, are parties to this case.[11] As noted by Judge Parrella in his ruling on reconsideration, the Court of Appeals for the D.C. Circuit recently evaluated the DOJ's involvement in military commissions in the context of another judicial bias case.[12] Vacating the rulings of a military judge who had been seeking a DOJ position while he presided over a commission, the D.C. Circuit acknowledged that the DOD-not the DOJ-is primarily responsible for the prosecution of these cases.[13] But the Court noted that "the Attorney General was a participant in [the military commission] from start to finish: he has consulted on commission trial procedures, he has loaned out one of his lawyers, and he will play a role in defending any conviction on appeal."[14] We adopt the D.C. Circuit's characterization of the DOJ's involvement in the commissions as we perform our analysis.
B. Relationship with Prosecutor Groharing[15]
One of the NSD attorneys assigned by DOJ to the DOD's Office of the Chief Prosecutor is Mr. Groharing. Before becoming an NSD attorney, Mr. Groharing served on active duty as a judge advocate in the Marine Corps. Judge Parrella knew Mr. Groharing when both were on active duty. After Mr. Groharing left active duty, Judge Parrella served as a fellow at NSD while Mr. Groharing was employed by the NSD. The petitioners claim that Judge Parrella's relationship with Mr. Groharing creates at least the appearance of bias.
In 2007 and 2008, while both were active duty Marine Corps officers, then-Majors Parrella and Groharing participated as teammates in the annual Wilderness Challenge, a two-day military-sponsored athletic event in West Virginia. Judge Parrella was the captain of the four-person team and, at the suggestion of a team member, asked Mr. Groharing to participate. The team members trained separately (Mr. Groharing and Judge Parrella were assigned to different duty stations), then met at the event. The two participated on the same team twice. After participating the second time, Mr. Groharing left active duty and was no longer eligible to participate. In support of their petition, the petitioners have attached a Navy public affairs article in which Judge Parrella extolled the teamwork necessary for the event. During voir dire, Judge Parrella characterized his relationship with Mr. Groharing during the two races as "friendly ... we got along well during those times, we competed together. However, that was the extent of the relationship."[16]
After Mr. Groharing left active duty, he was employed by the NSD and assigned by DOJ to the DOD Office of the Chief Prosecutor to assist in the prosecution of the military commissions. He worked in this capacity while Judge Parrella was a fellow at the NSD. While performing his fellowship at NSD, Judge Parrella was not involved with the commissions. He was aware that Mr. Groharing was assigned to these cases and recalled seeing him occasionally during that time. He recalled no substantive discussions with Mr. Groharing *1006 or anyone else about the commissions while the two were assigned to NSD.
C. Judge Parrella's relationship to the FBI and CIA[17]
Fellows at the NSD are, unsurprisingly, expected to be able to work with the FBI, CIA, National Security Agency (NSA), and DOD. Judge Parrella acknowledged that as an NSD fellow he worked with partners from the FBI. He did not recall working with anyone from the NSA or CIA, though he did perform document review at least once in a CIA facility. Judge Parrella acknowledged a continuing duty to not disclose classified material to which he had access during this time. When questioned by Mr. Hawsawi's counsel about his continuing duties as a result of his work at the NSD, and in particular to the FBI, Judge Parrella acknowledged that he was obligated to protect the attorney-client confidences and work product from his time as a fellow, including such matters stemming from his contact with the FBI. Judge Parrella refused to rule out the possibility that he might seek employment with a federal agency such as the FBI or CIA after leaving the Marine Corps, though he stated that he was not then interested in any such employment. On reconsideration following the D.C. Circuit's decision in Al-Nashiri, Judge Parrella again stated that he had "no intention to seek employment or any other future benefit from the DOJ."[18]
III. Applicable law
A. Jurisdiction
We have jurisdiction to entertain petitions for extraordinary relief that are "in aid of [our] jurisdiction."[19] We agree with the petitioners that the All Writs Act,[20] in conjunction with the Military Commissions Act,[21] gives us jurisdiction over this petition.
B. Standards applicable to the issuance of mandamus
Mandamus is a "drastic and extraordinary remedy"-one that is strictly confined to situations in which petitioners meet three conditions: First, they must demonstrate that they "have no other adequate means to attain the relief" they desire.[22] Second, they must demonstrate that their "right to [the] issuance of the writ is clear and indisputable."[23] Third, they must demonstrate that issuance of the writ is appropriate because of "exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion."[24]
While the threshold for issuing the writ remains high, cases involving judicial disqualification can present an appropriate occasion to grant extraordinary relief. The *1007 D.C. Circuit determined that "[m]andamus is an appropriate vehicle for seeking recusal of a judicial officer during the pendency of a case, as ordinary appellate review following a final judgment is insufficient to cure the existence of actual or apparent bias."[25] The Court explained that mandamus is warranted in these situations "because it is too difficult to detect all of the ways that [actual] bias can influence a proceeding" and apparent bias affects "public confidence in the integrity of the judicial process."[26]
C. Law pertaining to the disqualification of a military judge
We begin with a "strong presumption" against a military judge's disqualification.[27] Rule for Military Commissions (R.M.C.) 902 (2016) provides the standard under which military judges are to decide disqualification motions. R.M.C. 902, like its court-martial counterpart, is modeled on 28 U.S.C. § 455, the statute governing the recusal of Article III judges.
Subsection (a) of both R.M.C. 902 and § 455 begins with the general rule that a judge should disqualify himself or herself in any proceeding in which that judge's impartiality might reasonably be questioned.[28] This standard is objective. We evaluate potential bias from the perspective of a reasonable and informed observer, fully apprised of the surrounding circumstances. We will consider the petitioners' reasons for disqualification not only individually but in the aggregate.[29] We will ascertain whether all the circumstances surrounding Judge Parrella's service as military judge, individually and collectively, would lead a member of the public to reasonably question his impartiality.
Having stated the general rule in the first subsection, both R.M.C. 902 and § 455 go on to provide more precise guidance for specific situations. In these more detailed subsections we find guidance for judges who may have some earlier connection with the case as a lawyer. Judge Parrella's previous work at NSD and his relationship with another NSD attorney are central to this petition, so we will examine the applicable subsection, R.M.C. 902(b)(2), in more detail. And since the petitioners rely on case law interpreting the analogous subsections of § 455-which are different in important respects from R.M.C. 902-we will examine those too.
R.M.C. 902(b)(2) covers the disqualification of judges who have already performed some non-judicial legal function in the case. It is a narrow rule, disqualifying judges for prior legal work only "[w]here the military judge has acted as counsel, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally." Past association with other lawyers who performed legal work on the case is not disqualifying under this rule.
The statute governing Article III judges covers a greater range of scenarios over two subsections. The first subsection, 28 U.S.C. § 455(b)(2), disqualifies judges *1008 "[w]here in private practice [the judge] served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter ...." Thus, Article III judges may not hear cases if while they were in private practice another lawyer in the judge's law firm participated in that case.
A different standard applies, however, if an Article III judge was employed not in private practice, but by the government. Section 455(b)(3) disqualifies judges for prior government work only if they "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." Unlike § 455(b)(2) (but like the analogous R.M.C. 902(b)(2)), Article III judges are not disqualified for having had an "association" with other lawyers who participated in the case while they worked for the government.
The petitioners' claims rely heavily on the American Bar Association's (ABA) Model Code of Judicial Conduct. We agree that the ABA Model Code is generally applicable to military judges presiding over military commissions. R.M.C. 109(a) makes each service's judge advocate general responsible for the professional supervision and discipline of that service's military judges. The Judge Advocate General of the Navy (the officer supervising Marine Corps military judges) has in turn determined that "[t]o the extent that it does not conflict with statutes, regulations, or [the Judge Advocate General's own rules], the American Bar Association Model Code of Judicial Conduct ... applies to all military and appellate judges ... performing judicial functions ...."[30]
We are less certain, however, that the specific provision of the ABA Model Code on which the petitioners rely is applicable to military commissions. We apply the ABA Model Code when it does not conflict with other applicable regulations such as the Rules for Military Commissions. The provision of the ABA Model Code on which the petitioners depend is analogous to R.M.C. 902(b)(2) and § 455(b) -which is to say that it governs the disqualification of judges because they or a lawyer with whom they were associated performed legal work on the case. If the Model Rule and the Rule for Military Commissions provide conflicting guidance to judges who may be disqualified by their earlier contact with the case as an attorney, we must apply the Rule for Military Commissions.[31] We need not decide today, however, whether the Model Rule is inconsistent with the Rule for Military Commissions because we reach the same result under either rule.
The ABA Model Code of Judicial Conduct Rule 2.11(A)(6) (2010) provides for disqualification where a judge:
(a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association;
(b) served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding ...
The petitioners' unorthodox understanding of subsection (a) is important to their *1009 claim. They contend that the language disqualifying a judge who "was associated with a lawyer who participated substantially as a lawyer in the matter" includes a government lawyer who worked in the same agency with another government lawyer while the other lawyer worked on the matter in controversy. In the context of this case, the petitioners would have us hold that Judge Parrella was "associated" with Mr. Groharing during his fellowship, and that during this association, Mr. Groharing worked on this case. If we agreed that Judge Parrella's time as a NSD fellow amounted to an "association" with Mr. Groharing, application of the ABA Model Rules would require Judge Parrella's disqualification. But this is not our understanding of the rule.
The petitioners read ABA Model Rule 2.11(A)(6)(a) in isolation, failing to account for (or even refer to) the very next subsection applicable to government attorneys. Although subsection (a) (unlike the analogous subsection of § 455 ) is not limited by its own terms to attorneys in private practice, we think that a fair reading of subsections (a) and (b) together suggests that interpretation. We are not alone in our opinion. The ABA's commentary to a nearly identical predecessor model rule[32] observed that "[a] lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency[.]"[33] And state courts whose judicial codes are based on the ABA's Model Code agree: a judge who has served as a government lawyer is not disqualified by reason of such service if he or she did not participate personally and substantially in the matter in controversy.[34] Assuming without deciding that ABA Model Rule 2.11 applies generally to Judge Parrella, we find that subsection (A)(6)(a) is inapplicable to Judge Parrella's fellowship at NSD.
Finally, we will consider Judge Parrella's relationship with Mr. Groharing under R.C.M. 902(b) (1), which disqualifies military judges who have a personal bias or prejudice concerning a party. Consistent with ABA Model Rule 2.11(A)(1), we will interpret this rule to include bias or prejudice concerning a party's lawyer.
D. Due Process
The petitioners argue that Judge Parrella's participation in this case violates their constitutional right to due process.[35] Due process guarantees "an absence of actual bias" on the part of a judge.[36] The due process test for bias is also an objective *1010 one: we ask "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias."[37]
IV. Discussion
We find that the petitioners have not demonstrated a clear and indisputable right to a writ of mandamus directing Judge Parrella's disqualification. We discuss the basis for this determination by addressing the petitioners' arguments for recusal below.
A. Judge Parrella's fellowship at NSD
The petitioners allege that Judge Parrella's fellowship with NSD's Counterterrorism Section creates an appearance of bias. They allege that NSD has been "inextricably involved with the prosecution"[38] from the beginning of the case, and that during the fellowship Judge Parrella worked "hand-in-hand" with the FBI and the CIA[39] to whom he owes a "continuing duty of loyalty and confidentiality."[40] The petitioners cite to comments in Judge Parrella's military fitness report covering his fellowship at NSD in which he was praised for having "seamlessly integrated as a counterterrorism prosecutor."[41] The petitioners argue that these circumstances violate their right to due process, the Rules for Military Commissions, and the ABA's Model Code of Judicial Conduct, particularly Rule 2.11(A)(6)(a), requiring disqualification of judges who have been "associated with a lawyer who participated substantially as a lawyer in the matter during such association." The petitioners also allege that Judge Parrella's participation violates their right to due process.
We have already determined that ABA Model Rule 2.11(A)(6)(a) applies only to lawyers in private practice, and is therefore inapplicable to Judge Parrella's fellowship at NSD. But we must still consider the petition under R.M.C. 902(a) and the Due Process Clause. In this connection, the petitioners argue that Judge Parrella's former status as an NSD fellow disqualifies him from participation as a judge in this case because a reasonable person would question his impartiality in this case.
The petitioners cite to three cases in support of their claim. In the first case, the 2016 Supreme Court case Williams v. Pennsylvania ,[42] Ronald Castille, District Attorney for Philadelphia, approved a prosecutor's request to seek the death penalty against Williams.[43] Williams was sentenced to death.[44] Almost three decades later, Castille had become Chief Justice of the Supreme Court of Pennsylvania, and Williams's case was before that court where the Commonwealth sought to vacate a stay of execution.[45] Chief Justice Castille denied Williams's recusal motion based on Castille's role in seeking the death penalty in the case[46] and joined the rest of that court in vacating the stay.[47] The Supreme *1011 Court of the United States granted certiorari and vacated the decision, holding that Chief Justice Castille's participation violated Williams's right to due process because his "significant, personal involvement in a critical decision" in that case created "an unacceptable risk of actual bias."[48] That risk, in turn, "so endangered the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.' "[49]
We have no trouble distinguishing Williams from the petitioners' case. In his capacity as the District Attorney, Chief Justice Castille personally made a crucial substantive decision in the case in question-the decision to approve a line prosecutor's request to seek the death penalty. Having made that decision, his later participation in a judicial determination to lift a stay of execution created at least an appearance of bias. Judge Parrella, on the other hand, has had no previous involvement with petitioners' case. He has never made any substantive decisions in any role other than a judicial one. He recalls no substantive conversations about the cases with any military commission prosecutors. His participation presents none of the problems that characterized Chief Justice Castille's involvement in Williams' appeal.
In the petitioners' second case, Reed v. State ,[50] the Supreme Court of Florida interpreted Williams and arrived at the same result for the same reason. In Reed , a judge in a post-conviction hearing had worked as a capital prosecutor in the State Attorney's Office in the same county and at the same time as Appellant Reed's trial. The Supreme Court of Florida held that the judge should have recused herself. But as in Williams , the judge's own participation in the case was a factor. Reed alleged that while the judge was serving on the capital prosecution team, "each capital prosecutor ... had input in the decision making in each other's cases."[51] Citing Williams , the court found that the specter of a lawyer playing both a prosecutorial and a judicial role in the same case was unacceptable.[52] This unsurprising conclusion, however, does not help the petitioners, because the record contains no evidence that Judge Parrella has participated in this case in any prosecutorial role.
The third case relied on by petitioners is the Ninth Circuit case Preston v. United States .[53] Preston filed a wrongful death suit under the Federal Torts Claims Act.[54] The decedent had asphyxiated in an environmental test chamber owned by the United States Navy and leased to Hughes Aircraft Company.[55] A judgment against the United States would have potentially triggered a claim for indemnification against Hughes, who retained the law firm Latham & Watkins to represent them. Judge Letts, the district court judge who heard the case, was of counsel to Latham & Watkins when the suit was filed. While Judge Letts was of counsel, Latham and Watkins's participation in the case included representing Hughes in depositions, submitting affidavits for use by the United States, and other actions related to discovery. [56]
*1012 A second district court judge denied the plaintiff's motion to recuse Judge Letts, and the plaintiffs appealed.
The Ninth Circuit held that Judge Letts's association with Latham & Watkins while that firm represented Hughes required Letts's recusal. The Ninth Circuit found that even though Hughes had not been a party to the suit, Hughes had an interest in the suit's outcome. Letts's of-counsel status with the firm meant that lawyers with whom he previously practiced served as a lawyers in the matter during their association with Letts-a circumstance that required Letts's recusal.[57]
The petitioners argue that Judge Parrella's circumstance is more aggravated than Judge Letts's: "[T]he judge's association with one party is not as removed as it was in the Preston case. Judge Parrella is directly connected to the NSD-and the NSD is a party in this case as the prosecuting entity whose specific mission explicitly encompasses supporting the prosecution of this case."[58]
We do not agree that Preston should drive our analysis. The Preston court relied on § 455(b)(2), which (like the ABA Model Rule that we have found inapplicable to Judge Parrella's government fellowship) disqualifies judges who, while in private practice, were associated with lawyers who did substantial work on the case at hand. We are applying R.M.C. 902, which has no such provision. Preston is inapplicable to work performed by judges while they were government attorneys.
The petitioners also fail to demonstrate that they are entitled to relief as a matter of due process. In United States v. Norwood , decided a year after Williams , the Eighth Circuit Court of Appeals examined whether a judge's prior service as a United States Attorney disqualified her from hearing cases arising from that judge's former office.[59] The appellant in Norwood argued that due process and § 455(a) (the general provision disqualifying judges when their impartiality might reasonably be questioned) required the trial judge to recuse herself because she served as a United States Attorney while federal agents investigated a series of bank frauds that ultimately implicated him. The Eighth Circuit, interpreting Williams , and noting that the government had not developed information about Norwood's involvement in the scheme until after the judge was no longer a prosecutor, held that the judge's prior status as a United States Attorney during the larger investigation did not offend the statute or due process.[60] As in Williams and Reed , the Norwood court's decision turned on whether the prosecutor-turned-judge had an earlier "significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."[61] Whatever Judge Parrella's status was with respect to other NSD attorneys during his fellowship, he had no involvement in this case.
*1013 We find that Judge Parrella's fellowship at NSD does not require his recusal under R.C.M. 902, the ABA Model Code of Judicial Conduct, or the Due Process Clause. The petitioners cannot show that they have an indisputable right to relief.
B. Judge Parrella's relationship with Mr. Groharing
The petitioners assert that Judge Parrella's familiarity with a prosecutor, Mr. Groharing, necessitates his recusal. We disagree.
Most of Judge Parrella's contact with Mr. Groharing occurred over ten years ago, when both were active duty Marine Corps judge advocates. We have considered the two men's participation in the Wilderness Challenge in 2007 and 2008, and the fact that Mr. Groharing was one of the NSD prosecutors assigned to the DOD Office of the Chief Prosecutor during Judge Parrella's fellowship with NSD. During voir dire, Judge Parrella stated that he had infrequent contact with Mr. Groharing in the ten years since they had competed together, and that they had not discussed this case. He was certain that his acquaintance with Mr. Groharing would not affect any decision he made as military judge.
In addition to his familiarity with Mr. Groharing, the petitioners argue that the frequent necessity for ex parte hearings between the military judge and the government concerning the protection of classified matters aggravates the perception of bias. In particular, the petitioners complain of Judge Parrella's order directing government counsel to give him an ex parte presentation on the history of classified litigation in this case. In this order Judge Parrella, whose participation in this case began six years into the litigation, directed the government to provide him with:
a. The general history and procedural posture of all Government filings requesting summaries, substitutions, or other relief from the Commission pursuant to [Military Commission Rule of Evidence (Mil. Comm. R. Evid.) ] 505;
b. The substance of all declarations of knowledgeable United States officials possessing authority to classify information that have been filed with the Commission; and
c. All systems or schemes used by the Government for the protection of classified places or people used in [Mil. Comm. R. Evid.] 505 filings.[62]
We find nothing in Judge Parrella's history with Mr. Groharing that requires his disqualification. We accept that under some circumstances a personal relationship between a judge and a party or attorney may create a reasonable question as to the judge's impartiality.[63] But Judge Parrella's history with Mr. Groharing is relatively impersonal compared to cases in which courts have found recusal to be unnecessary.[64] As for the order for ex parte briefing (and the likely necessity for more such *1014 orders) and other rulings he has made,[65] we do not find that such an order calls Judge Parrella's objectivity into question. The briefing Judge Parrella ordered was advisable for a judge entering this litigation at this stage. Even if the order or other rulings were objectionable to the petitioner, adverse rulings do not establish bias or prejudice, nor do they create question as to judicial impartiality.[66]
We have considered the petitioners' claims under R.M.C. 902(a) and 902(b)(1) and find that they have failed to demonstrate a clear and indisputable right to relief on the basis of Judge Parrella's acquaintance with Mr. Groharing.
C. Judge Parrella's "continuing duty of loyalty" to the FBI and CIA
The petitioners assert that Judge Parrella's fellowship with the NSD-during which he worked closely with the FBI and, to lesser extent, the CIA-created a "continuing duty of loyalty" to these agencies that forecloses his participation in this case as a judge.[67] Petitioner provides no authority-and we can find none-that stands for the proposition that even close coordination with law enforcement or intelligence agencies as a prosecutor is a bar to later service as a judge in cases in which those agencies play a role. And extensive voir dire revealed that Judge Parrella's "continuing duty of loyalty" amounted to an obligation to keep secret the attorney-client confidences and classified matters to which he had access during his fellowship.[68] These obligations do not require recusal. Nor does Judge Parrella's refusal to rule out the possibility that he may someday seek employment with the FBI or CIA after retiring from the Marine Corps mandate his recusal.
We have considered the petitioners' argument that the government may assert a position-on behalf of NSD or another government agency-that Judge Parrella knows not to be true based on his experience at NSD. The petitioners assert that Judge Parrella's duty of loyalty to the NSD will then prevent him from ruling in the petitioners' favor. But the record contains no evidence that Judge Parrella has any personal knowledge of any disputed evidentiary facts concerning the proceeding-a circumstance that would be disqualifying.[69] We see no reason to doubt that Judge Parrella would notify the parties and take appropriate steps if a disqualifying circumstance arose.
V. Conclusion
We have considered the petitioners' claims, both individually and in the aggregate, and find that the petitioners have failed to demonstrate an indisputable right to the requested relief. None of the circumstances of Judge Parrella's background, service history, or acquaintance with counsel rebut the presumption that Judge Parrella's continued participation in this case is appropriate.
The petitions for a writ of mandamus are denied.
Opinion for the Court filed by Fulton, Appellate Judge, with whom Pollard and Hutchison, Appellate Judges, join.

Transcript (Tr.) 19,886 (Transcript citations are to the authenticated record); Appellate Exhibit (AE) 001A.

Tr. 19,873-20,027.

Id . at 20,061-63; AE 595O 1 n.3 (Oct. 19, 2018); Mohammad Pet. 6 (citing Military Commission Trial Judiciary Rule of Court 3.5.i.(4) (2016) (At the military commission, "[t]hose accused not a signatory to a motion filed by another accused are presumed to have joined the motion.").

AE 595G (Oct. 10, 2018).

Tr. 20,027-37.

Tr. 20,435-36; 21,262-21,265; AE 595I (Oct. 19, 2018).

AE 595O (Nov. 19, 2018).

Hawsawi Pet. 2-3; Mohammad Pet. 2-3.

See generally In re Al-Nashiri , 921 F.3d 224 (D.C. Cir. 2019).

See Tr. 19,918-21; 19,942-43; 19,952-65; 19,986-96; 20,004-05; AE 001B (biography); AE 595B (fitness report); AE 595A, Attachs. D, G; AE 595O (judicial findings).

Rule for Military Commissions (R.M.C.) 103(a)(24)(B).

See In re Al-Nashiri , 921 F.3d at 234-37.

Id. at 235-37.

Id. at 236.

See Tr. 19,919-20; 19,966-74; 19,993-96; 20,006; AE 595O (judicial findings). See also sources supra n. 10.

Tr. 19,972.

The sources for information about Judge Parrella's relationship to the FBI and CIA are as follows: Tr. 19,988-96; 20,023-25; AE 595O (judicial findings).

AE 595LL at 5.

In re Al-Nashiri , 791 F.3d 71, 78 (D.C. Cir. 2015) ; 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

Id .

10 U.S.C.S. § 950f (2018).

Cheney v. United States Dist. Court , 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (citation omitted).

Id. at 381, 124 S.Ct. 2576 (internal quotation marks omitted).

Id. at 380, 124 S.Ct. 2576 (internal quotation marks omitted).

In re Mohammad , 866 F.3d 473, 475 (D.C. Cir. 2017) (internal quotation marks omitted).

Id . (internal quotation marks and brackets omitted).

United States v. Quintanilla , 56 M.J. 37, 44 (C.A.A.F. 2001).

R.M.C. 902(a); see also 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); see also In re Al-Nashiri , 921 F.3d at 233-35.

See United States v. Laureano-Perez , 797 F.3d 45, 74 (1st Cir. 2015).

Judge Advocate General of the Navy Instr. 5803.1E, Professional Conduct of Attorney's Practicing Under the Cognizance and Supervision of the Judge Advocate General (Jan. 7, 2015), ¶. 7.

See R.C.M. 109(b) (3)(A) and (C).

American Bar Association (ABA) Model Code of Judicial Conduct, Canon 3(E)(1)(b) (1990) (disqualifying judges where "the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter ...").

ABA website, Text of Model Code of Judicial Conduct , "Side-by-Side Text Comparison 1990 Model Code of Judicial Conduct with Comparable Provisions of 2007 Code," Canon 3E(1)(b) cmt. at 25 (Apr. 18, 2018), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/pic_migrated/old_new.pdf.

See, e.g., State v. Langley , 363 Ore. 482, 503, 424 P.3d 688, 703 (2018) ; State v. Connolly , 930 So. 2d 951, 955 (La. 2006) ; In re Knece , 81 Ohio St. 3d 1212, 1212, 688 N.E.2d 515, 516 (1997).

See Hawsawi Pet. 5, 14-20, 26, 28. See also Williams v. Pennsylvania , --- U.S. ----, 136 S. Ct. 1899, 1903, 195 L.Ed.2d 132 (2016) ; Tumey v. Ohio , 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (stating that the Fourteenth Amendment's due process clause guarantees a trial before an impartial judicial officer).

In re Murchison , 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ; see In re Al-Nashiri , 921 F.3d at 233-34.

Williams , 136 S. Ct. at 1905 (internal quotation marks omitted).

Hawsawi Pet. 7.

Id . at 19.

Id . at 3, 19. See id . 13, 29-31.

AE 595B (fitness report).

--- U.S. ----, 136 S. Ct. 1899, 195 L.Ed.2d 132 (2016).

Id. at 1903.

Id. at 1904.

Id .

Id .

Id . at 1904-05.

Id . at 1908.

Id. at 1908-09 (quoting Withrow v. Larkin , 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ).

259 So. 3d 718 (Fla. 2018).

Id. at 720.

Id. at 721.

923 F.2d 731 (9th Cir. 1991).

Id. at 731-32. See 28 U.S.C. §§ 1346(b), 2671, et seq.

Preston , 923 F.2d at 732.

Id. at 734.

Id. at 735.

Hawsawi Pet. 24. See also Philip Morris USA, Inc. v. United States FDA , 156 F. Supp. 3d 36, 45-47 (D.D.C. 2016) (distinguishing Preston and discussing "host of factors in determining whether recusal is warranted").

854 F.3d 469, 471-72 (8th Cir. 2017).

Id . at 472 ; but see United States v. Arnpriester , 37 F.3d 466 (9th Cir. 1994) (holding that a district court judge who had been the United States Attorney when the defendant was investigated for the crimes of which he was ultimately convicted had a duty to recuse himself under 28 U.S.C. § 455(a) ).

Norwood , 854 F.3d at 472 (quoting Williams , 136 S. Ct. at 1905-06 ).

AE 542Q, Amended Order, Ex Parte Presentation 2 (Nov. 5, 2018.

See, e.g., United States v. Jordan , 49 F.3d 152, 156-58 (5th Cir. 1995).

See, e.g., United States v. Murphy, 768 F.2d 1518 (7th Cir. 1985) (Judge's failure to recuse not an abuse of discretion where prosecutor and judge planned vacation together immediately after trial); Parrish v. Bd. of Comm'rs , 524 F.2d 98 (5th Cir. 1975) (acknowledgement of friendship between parties and judge insufficient to require recusal). See also, e.g., Cheney v. United States Dist. Court , 541 U.S. 913, 916, 124 S.Ct. 1391, 158 L.Ed.2d 225 (2004) (Scalia, J.) (stating "friendship ... has traditionally not been a ground for recusal where official action is at issue" (emphasis in original)).

See Hawsawi Pet. 27-29; Mohammad Pet. 22-27.

Liteky v. United States , 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); United States v. Hite , 769 F.3d 1154, 1172 (D.C. Cir. 2014) (stating same).

Hawsawi Pet. 3, 19.

See AE 595O at 4-5.

See R.M.C. 902(b)(1).