# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 12, 2019       Decided April 10, 2020

No. 19-1100

IN RE: MUSTAFA AHMED AL HAWSAWI AND KHALID SHAIKH MOHAMMAD,
PETITIONERS

Consolidated with 19-1117

On Petition for Writ of Mandamus and Prohibition and
Petition for a Writ of Mandamus
to the United States Court of Military Commission Review
and the Military Commission

*Suzanne M. Lachelier*, Senior Attorney, Office of Military Commissions Defense Organization, argued the cause for petitioner Mustafa Ahmed Al Hawsawi. *Edwin A. Perry*, Trial Attorney, argued the cause for petitioner Walid M. Mubarak Bin 'Atash. With them on the petitions and the joint reply were *Rita Radostitz*, Senior Trial Attorney, *Walter B. Ruiz* and *Sean M. Gleason*, Attorneys, and *Lt. Col. Derek A. Poteet*, Office of the Chief Defense Counsel.

*Jeffrey M. Smith*, Attorney, U.S. Department of Justice, argued the cause and filed the opposition to the petitions for writs of mandamus. *Sharon Swingle*, Attorney, entered an appearance.

Before: HENDERSON and TATEL, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The petitioners are being tried before a military commission at Guantanamo Bay, Cuba, for their alleged roles in the September 11th terrorist attacks. They seek writs of mandamus vacating all orders issued by the former presiding military judge, Marine Corps Colonel Keith Parrella, because of the appearance of partiality that they claim was created by his earlier work at the United States Department of Justice (DOJ), his acquaintance with one of the military commission prosecutors, the possibility that he might seek a position with the DOJ in the future and his alleged lack of candor regarding potential grounds for disqualification. Because it was neither clear nor indisputable that Parrella was obligated to recuse himself, we deny the petitions.

## I. Background

Khalid Shaikh Mohammad (Mohammad), Walid Muhammad Salih Mubarak bin 'Atash (bin 'Atash) and Mustafa Ahmed Adam al Hawsawi (Hawsawi) are three of the five defendants being tried before a twelve-member United States Military Commission at Guantanamo Bay created pursuant to the Military Commissions Act of 2009 (Commission), *see* 10 U.S.C. §948b, for their alleged roles in the September 11th terrorist attacks (we refer to the petitioners collectively as the "Guantanamo defendants" unless otherwise noted). United States Army Colonel James Pohl was initially detailed to preside on the Commission but, in 2018, Pohl stepped down and detailed United States Marine Corps Colonel Keith Parrella (Parrella) to preside in his place. Upon assuming that position, Parrella provided the Guantanamo defendants

with a short summary of his career. The summary recited that in 2014 Parrella served as a counterterrorism prosecutor in the DOJ's Counterterrorism Section (CTS) as part of a nine-month fellowship.

The defendants sought discovery regarding the fellowship, but the prosecution declined to provide it. They then moved to compel discovery, asserting that Parrella "possessed a personal bias or prejudice concerning a party, has served as a counsel in the same general case, and/or has expressed an opinion concerning the guilt or innocence of the Accused." Bin 'Atash Petition at 6. The Commission held a hearing on the motion. Before the hearing, Parrella distributed a copy of his U.S. Marine Corps Fitness Report that discussed his DOJ fellowship. At the hearing, the defendants conducted a voir dire of Parrella.

The voir dire focused on Parrella's work at the CTS and his relationship with members of the prosecution team. [1] Parrella indicated that he was co-detailed to several terrorism-related cases while with the CTS but he explained that he did not work on any matter involving the Commissions, the September 11th attacks or al-Qaeda. In response to questioning, Parrella stated that he had some limited interaction with the FBI and CIA, namely conducting document review at warehouses or facilities controlled by

---

[1] Approximately forty lawyers worked in the CTS at the time of Parrella's fellowship. Many of the prosecutors who appear before the Commission were, and are, assigned from the DOJ's National Security Division (NSD), of which the CTS is a part. While assigned to the Commission, the prosecutors conduct their work from the Office of the Chief Prosecutor of the Office of Military Commissions.

those agencies. He declined to provide further details, citing lack of memory and his duty of confidentiality.

Parrella also indicated that he was familiar with a member of the defendants' prosecution team, Jeffrey Groharing. Parrella and Groharing first met when they were both stationed in San Diego during the late 90s and early 2000s. Parrella indicated that the two had little interaction at that time and were best described as "acquaintance[s]." *9/11: Khalid Shaikh Mohammad et al. (2)* Military Commission Transcript 20505 (Sept. 10, 2018) (unofficial). Parrella and Groharing interacted again in 2007 and 2008, when they twice competed together on a four-man team in an endurance race called the "Wilderness Challenge." Parrella stated that he organized the team and selected Groharing as a member based on his reputed athletic ability. Other members of the team interviewed by the Guantanamo defendants explained that Groharing was included on the team on the recommendation of one of the other members. The team did not train together and met only for the two races.[2] Finally, Parrella indicated that he saw Groharing "a couple of times" while they were both at the DOJ (Parrella as a CTS fellow, Groharing as a Commission prosecutor) and at a Marine Corps Ball Ceremony. Commission Tr. at 20509.

---

[2] The Guantanamo defendants suggest that Parrella misrepresented the extent of his interactions with his "Wilderness Challenge" teammates. At best, the Guantanamo defendants' suggestion is accurate only in a technical sense. Parrella explained that members of the team met up only for the race, but other team members explained that they did in fact meet the day before the race to walk the course. They stated that members of the team who were stationed together trained together but it is undisputed that Parrella and Groharing were not and did not.

The Guantanamo defendants moved to recuse Parrella, which motion he denied. A month later Hawsawi again sought Parrella's recusal. He relied on the same grounds as the original motion but also alleged that Parrella was evasive in his voir dire responses. Parrella also denied that motion. Hawsawi then petitioned for a writ of mandamus before the Court of Military Commission Review (CMCR)[3] and Mohammad petitioned separately. *See Hawsawi v. United States*, 389 F. Supp. 3d 1001, 1003 (CMCR 2019). Bin 'Atash, after conducting his own investigation of Parrella's background, moved to disqualify and transfer Parrella before Douglas K. Watkins, Chief Judge of the Military Commissions. Chief Judge Watkins did not respond to that motion other than to acknowledge receipt. Parrella denied bin 'Atash's motion as procedurally improper and without merit. Shortly thereafter, Parrella's detail as a military judge ended for an unrelated, routine reason (the beginning of a new assignment). Hawsawi then petitioned our court for mandamus relief. The CMCR subsequently denied Hawsawi's and Mohammad's mandamus petitions. *See Hawsawi*, 389 F. Supp. 3d at 1014. Mohammad then joined Hawsawi's petition. Bin 'Atash separately filed a mandamus petition with our court and the petitions were consolidated. *See* Order, *In re Hawsawi* (D.C. Cir. May 31, 2019). We now consider the consolidated petitions.

## II. Analysis

This court has exclusive jurisdiction of appeals from both the military commissions and the CMCR. 10 U.S.C. § 950g. We may issue all writs necessary and appropriate, including mandamus, in aid of our jurisdiction. 28 U.S.C. § 1651; *In re Al-Nashiri*, 921 F.3d 224, 233 (D.C. Cir. 2019) (*Al-Nashiri III*).

---

[3] The CMCR hears both interlocutory and final appeals from the military commissions. *See* 10 U.S.C. §§ 950d, 950f.

We have previously held that "mandamus provides 'an appropriate vehicle for seeking recusal of a judicial officer during the pendency of a case.'" *Al-Nashiri III*, 921 F.3d at 233 (quoting *In re Mohammad,* 866 F.3d 473, 475 (D.C. Cir. 2017)). That power extends to vacating the issued orders of a judge who should have recused. *Id*. at 240. Still, the "traditional prerequisites for mandamus relief" must be satisfied. *Id*. at 233 (quoting *In re Al-Nashiri*, 791 F.3d 71, 78 (D.C. Cir. 2015)). "For a court to grant a writ of mandamus, three conditions must be met: the petitioner must demonstrate that his right to issuance of the writ is clear and indisputable, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires, and the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id*. at 233 (internal quotation marks and brackets omitted) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380 (2004)). The Guantanamo defendants claim that they meet all three prerequisites. The prosecution disputes only the first.

Before we address the merits of the petitions, however, we clarify the standard of review to be applied to a petition for mandamus to order a judge to recuse himself. The prosecution relies on our decision in *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015), where, on direct review, we reviewed the denial of a recusal motion for abuse of discretion, and maintains that we should assess whether the defendants have established "that it is clear and indisputable that Judge Parrella committed an abuse of discretion when he declined to recuse." Resp't Br. at 16. We read this request as one to combine our "clear and indisputable" standard with the "abuse of discretion" standard in the manner adopted by several sister circuits. *See, e.g.*, *In re Bulger*, 710 F.3d 42, 45–46 (1st Cir. 2013).

To the extent the prosecution urges us to adopt this "combined" test, we reject its invitation. Our cases have consistently required a mandamus petitioner to demonstrate a "clear and indisputable" right to relief, without more. *See, e.g.*, *Al-Nashiri III*, 921 F.3d at 233 (petitioner must show "clear and indisputable" right to relief); *In re Mohammed,* 866 F.3d 473 (D.C. Cir. 2017) (per curiam) (same); *In re Khadr*, 823 F.3d 92, 100 (D.C. Cir. 2016) (same); *In re Brooks*, 383 F.3d 1036, 1041 (D.C. Cir. 2004) (same). Although we have occasionally referenced the "abuse of discretion" standard in those decisions, *see, e.g.*, *In re Brooks*, 383 F.3d at 1038 ("We now deny the petition to recuse Judge Lamberth from the pending contempt proceedings because . . . we have no reason to conclude he abused his discretion by refusing to recuse himself."); *In re Al Baluchi*, No. 19-1146, 2020 WL 1222825, at *5 (D.C. Cir. Mar. 13, 2020) (citing *Cheney*'s "clear and indisputable" standard alone, before later explaining petitioner must show "that it is 'clear and indisputable' that the Commission abused its discretion"), those decisions make clear that our court has not adopted a "combined" or "doubly deferential" test, *In re Bulger*, 710 F.3d at 45–46.

In any event, consistent with our precedent and that of the Fifth, Tenth and Eleventh Circuits, we assess whether to grant the Guantanamo defendants' requested relief using the specific standard for mandamus relief alone. *See In re Moody*, 755 F.3d 891, 898 (11th Cir. 2014); *Nichols* v. *Alley*, 71 F.3d 347, 350 (10th Cir. 1995); *In re Dresser Industries, Inc.*, 972 F.2d 540, 542–43 (5th Cir. 1992). At the same time, we keep in mind that "[m]andamus is a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Khadr*, 823 F.3d at 97 (internal quotation marks omitted) (quoting *Cheney*, 542 U.S. at 380).

Several sources set out Parrella's recusal obligations. *See* 28 U.S.C. § 455; Code of Conduct for United States Judges; America Bar Association Model Code of Judicial Conduct; Rules for Courts-Martial; Rules for Military Commissions (R.M.C.). In our most recent decision disqualifying a Commission judge, we relied on all of these sources to assess whether the judge should have recused himself and held that "[t]hese assembled sources of rules governing judicial conduct . . . all speak with one clear voice when it comes to judicial recusal: judges 'shall disqualify' themselves in any 'proceeding in which their impartiality might reasonably be questioned.'" *Al-Nashiri III*, 921 F.3d at 234 (brackets omitted) (quoting 28 U.S.C. § 455(a); Code of Conduct for United States Judges, Canon 3(C)(1); American Bar Association, Model Code of Judicial Conduct, Rule 2.11; Rule for Courts-Martial 902(a)).[4] In other words, a judge must recuse himself if there "is 'a showing of an appearance of bias . . . sufficient to permit the average citizen reasonably to question a judge's impartiality.'" *Al-Nashiri III*, 921 F.3d at 234 (quoting *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981)). A judge should be careful, however, to avoid "provid[ing] litigants with a veto against unwanted judges." *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001) ("Disqualification is never taken lightly. In the wrong hands, a disqualification motion is a procedural weapon to harass opponents and delay proceedings."); *In re Kaminski*, 960 F.2d 1062, 1065 n.3 (D.C. Cir. 1992) ("A judge should not recuse himself based upon conclusory, unsupported or tenuous

---

[4] We note that the Rules for Military Commissions and the Rules for Courts-Martial are discrete rules, as *Al-Nashiri III* makes clear. *See Al-Nashiri III*, 921 F.3d at 234.

allegations.") (citing *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988)).

*Al-Nashiri III*, our most recent precedent involving a Guantanamo Bay detainee, discussed only the standards contained in 28 U.S.C. § 455(a) ("Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.") and R.M.C. 902(a) ("[A] military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."). But both 28 U.S.C. § 455[5] and R.M.C. 902[6] also specifically address

---

[5] As relevant here, 28 U.S.C. § 455 provides:

 (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

 (b) He shall also disqualify himself in the following circumstances:

  (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

 . . .

  (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]

[6] As relevant here, R.M.C. 902 provides:

recusal based on earlier government service. 28 U.S.C. § 455(b)(3) requires a judge to "disqualify himself . . . [w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy" and R.M.C. 902(b)(2) requires a military judge to disqualify himself if he "acted as counsel, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally." The United States Supreme Court addressed the relationship between sections 455(a) and (b) in *Liteky v. United States*, 510 U.S. 540 (1994). There, the Court reviewed a motion to disqualify the presiding judge in a criminal trial based on statements and decisions the judge made during an earlier trial. The issue before the Court was whether section 455 incorporated the historic rule that a judge need only recuse himself when alleged bias flowed from "extrajudicial sources."

---

(a) *In general*. Except as provided in section (e) of this rule, a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned.

(b*) Specific grounds*. A military judge shall also disqualify himself or herself in the following circumstances:

(1) Where the military judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.

(2) Where the military judge has acted as counsel, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally.

The Court declared that section 455(b)(1), by providing that a judge shall "disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party," incorporates the source of the alleged bias. *Id*. at 550. It then went on to hold that in assessing whether a judge's "impartiality could reasonably be questioned" under section 455(a) a court must also consider the source of the alleged "appearance of partiality." *Id*. at 553. It explained its reasoning thus:

> Declining to find in the language of § 455(a) a limitation which (petitioners acknowledge) *is* contained in the language of § 455(b)(1) would cause the statute, in a significant sense, to contradict itself. As we have described, § 455(a) expands the protection of § 455(b), but duplicates some of its protection as well—not only with regard to bias and prejudice but also with regard to interest and relationship. Within the area of overlap, it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b).

*Id*. at 552–53. The Court elaborated that "[i]t is correct that subsection (a) has a broader reach than subsection (b) . . . . [h]owever, when one of those aspects addressed in (b) *is* at issue, it is poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires." *Id*. at 553 n.2 (internal quotation marks omitted).

A judge on our court has construed *Liteky* in the context of section 455(b)(3), which requires recusal based on certain roles performed in earlier "government employment." In *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, then–Judge Kavanaugh addressed a motion for his recusal based on his

earlier Executive Branch employment. 471 F.3d 1355 (D.C. Cir. 2006). He explained that in section 455(b)(3), "Congress clearly and specifically addressed the effect of prior government service on a judge's recusal obligations" and "[i]n determining whether recusal is appropriate or inappropriate based on prior government employment, judges must respect the line drawn by Congress." *Id*. at 1357–58. Consequently, because his earlier Executive Branch work did not fall within section 455(b)(3)'s prohibition, Judge Kavanaugh declined to recuse himself under both section 455(a) and section 455(b)(3). *Id*. at 1358.

The Guantanamo defendants maintain that we should decide whether one could reasonably believe that Parrella's fellowship at the CTS created a question regarding his partiality without relying on section 455(b)(3) or R.M.C. 902(b)(2). In their view, "[i]n the actual holding [in *Liteky*], the Supreme Court held that 28 U.S.C. § 455(a) *expands* the protection of § 455(b), *but duplicates some of its protection as well*—not only with regard to bias and prejudice but also with regard to interest and relationship." Pet'r Reply Br. at 3–4 (quoting *Liteky*, 510 U.S. at 552). They read *Liteky* as "highlight[ing] that the appearance of bias is a broader basis for recusal than the specific grounds enumerated in Section 455(b)." *Id.* at 4. They also attempt to harness Judge Kavanaugh's opinion in *Baker & Hostetler* to their argument, pointing to his explanation that "Section 455(a)'s general 'catch-all' provision . . . covers situations not addressed by 455(b) that nonetheless might be appropriate for recusal." *Id.* at 5 (quoting *Baker & Hostetler*, 471 F.3d at 1357). Finally, the Guantanamo defendants point out that both section 455(b) and R.M.C. 902(b) begin with the language "shall *also* disqualify", maintaining that "also" "dispels [the prosecution's] argument that Rule 902(b) trumps any claim about the appearance of bias." *Id.* at 4.

We cannot adopt the defendants' reading of precedent or of the pertinent disqualification provisions. In *Liteky*, the Supreme Court held that section 455(a) "expands" the protection of section 455(b) but it also clarified that it would be "poor statutory construction to interpret (a) as nullifying the limitations (b) provides." *Liteky*, 510 U.S. at 553 n.2. The Court was clear that, if an issue is within the scope of section 455(b), section 455(a) should not be read to require disqualification if section 455(b) does not. Judge Kavanaugh was also clear that section 455(a) should not be used to resolve a question that 455(b) addresses. The statement quoted by the Guantanamo defendants itself makes that point. *See Baker & Hostetler*, 471 F.3d at 1357 ("[S]ection [455(a)] covers situations *not addressed* by 455(b)." (emphasis added)). Moreover, however persuasive the Guantanamo defendants' reading of the statute may be in theory, it was available to the Supreme Court and the Court did not adopt it. In sum, except in "rare and extraordinary circumstances," *Baker & Hostetler*, 471 F.3d at 1358, a Commission judge need not recuse himself because of his earlier government service unless he either (1) "acted as counsel, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally," R.M.C. § 902(b)(2), or (2) "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy," 28 U.S.C. § 455(b)(3).

The Guantanamo defendants first argue that Parrella should have recused himself because of his previous work at the CTS. Reviewed under the authority discussed above, we think it is neither clear nor indisputable that Parrella's work at the CTS, including any interactions he had with the CIA and FBI, obliged him to recuse himself. He testified that none of the work he performed at the CTS bore any relation to the Commission, the September 11th attacks or al-Qaeda. The

Guantanamo defendants did not rebut that testimony. We see nothing "rare and extraordinary" in Parrella's earlier government service. Accordingly, we decline to find that Parrella should have disqualified himself because of his work as a CTS fellow.

We turn to the other grounds for recusal pressed by the Guantanamo defendants. They argue that Parrella's "two-decade-long friendship" and "close relationship" with Groharing, his alleged lack of forthrightness at voir dire and the fact that he did not rule out post-retirement DOJ employment created an appearance of partiality. Because neither party suggests that any ethical rule or statutory provision *expressly* addresses these grounds for disqualification, we evaluate them under the general appearance of partiality standard set forth in 28 U.S.C. § 455(a) and R.M.C. 902(a).

A judge's past social relationship with a participant in a proceeding does not generally require recusal in either the civilian or the military justice systems. *See United States v. Sullivan*, 74 M.J. 448, 455 (C.A.A.F. 2015) (military judge's disqualification was not required where "the number and type of contacts that the military judge had with the participants in the court-martial appear to simply be a natural consequence of the military judge's length of service"); *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1295–96 (5th Cir. 1990) ("[E]ven the most superficial research would have put [counsel] on notice" that allegation that judge had "known the opposing counsel since he was a kid and . . . was friends [with] opposing counsel and opposing counsel's father" was not ground for recusal). That includes a past relationship with a party's counsel. *See Henderson*, 901 F.2d at 1295–96; *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) ("In today's legal culture friendships among judges and lawyers are

common. They are more than common; they are desirable . . . . Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend— appears as a lawyer." (string cite omitted)); *Philip Morris USA v. United States FDA*, 156 F. Supp. 3d 36, 53 (D.D.C. 2016) (same). Granted, such a relationship can sometimes be a ground for disqualification. *See, e.g.*, *Murphy*, 768 F.2d at 1538 ("These cases also suggest . . . that when the association exceeds what might reasonably be expected in light of the association activities of an ordinary judge, the unusual aspects of a social relation may give rise to a reasonable question about the judge's impartiality."(citation omitted)). The question is whether Parrella's relationship with Groharing was so close or unusual as to be problematic.

The evidence before us indicates that it was not problematic. Contrary to the Guantanamo defendants' characterization of Parrella's relationship with Groharing, by all accounts it was cordial but not intimate. Their participation together in the "Wilderness Challenge" races may raise a question on its face but Parrella adequately addressed any concern by explaining that the two did not interact beyond the races themselves during that time, testimony that was confirmed by other team members. The defendants have not cited any case in which a similar relationship has been found problematic and we know of none. To the contrary, other courts have concluded that a relationship between a judge and counsel closer than what is at issue here did not require recusal. *See, e.g.*, *Henderson*, 901 F.2d at 1295–96 (no ground for recusal when judge had known counsel appearing before him "since [counsel] was a kid").

The Guantanamo defendants argue that required *ex parte* communications between the prosecution and the presiding Commission judge distinguishes their petitions from those

decisions that have declined to require disqualification based on a social relationship between a judge and counsel appearing before him. We disagree. We do not see how the necessary use of *ex parte* communications in the Commission proceedings substantially increased the appearance of partiality created by Parrella's past relationship with Groharing.

Ultimately, someone aware of all the facts would not be reasonably likely to believe that Parrella was partial to Groharing on account of their limited social relationship. This is particularly true after the full voir dire Parrella allowed and his assurance that his relationship with Groharing would not affect his decisions. *See Sullivan*, 74 M.J. at 454 (military judge's recusal was not required in part because he disclosed potentially problematic relationships, subjected himself to voir dire and indicated his associations would not influence his decisions); *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F. 1999) ("[D]espite an objective standard, the judge's statements concerning his intentions and the matters upon which he will rely are not irrelevant to the inquiry."). Accordingly, we believe that Parrella's relationship with Groharing did not require his recusal.

Next, we assess the Guantanamo defendants' claim that Parrella's behavior during voir dire created an appearance of partiality. They repeatedly suggest that Parrella was less than forthcoming during the hearing, describing him as "terse and obstructionist" and stating that "Judge Parrella refused to answer any questions about the appearance of bias or questions about whether his prosecutorial work with the CTS and his relationship with the prosecution team could possibly have an impact on his consideration in the case." Bin 'Atash Petition at 25–27. They contend that his alleged lack of candor is a ground to find that Parrella exhibited an appearance of partiality.

A judge's lack of candor about potential grounds for recusal can of course produce an appearance of partiality. *See Al-Nashiri III*, 921 F.3d at 237 ("Given this lack of candor, a reasonable observer might wonder whether the judge had done something worth concealing."). But the Guantanamo defendants mischaracterize Parrella's responses and conduct at the recusal hearing. Parrella submitted himself to several hours of probing questions by the Guantanamo defendants' counsel about various aspects of his professional experience and personal relationships, including his time at the CTS and his relationship with Groharing. These questions were expressly intended to suss out any actual or apparent partiality and Parrella appears to have answered them fully and forthrightly. The only instances that Parrella could plausibly be said to have withheld information from the Guantanamo defendants were his failure to affirmatively disclose his relationship with Groharing before the hearing and his refusal to answer detailed questions about his past interactions with the CIA and FBI. In both cases, however, he provided explanations sufficient to mitigate any lack of candor that might otherwise have attached—as to the former, Parrella explained that he had not mentioned Groharing earlier because he did not believe the relationship was problematic, that he was certain it would come up at the hearing and that he would have brought it up himself had it not. As to the latter, he cited lack of memory and his continuing duty of confidentiality. Given that Parrella's relationship with Groharing was unproblematic, there is no indication that he was attempting to conceal that relationship. And because his explanation for failing to answer detailed questions about his interactions with the CIA and the FBI is plausible, we do not believe that Parrella's responses, or failure to respond, to the Guantanamo defendants' questioning created the appearance of partiality.

The Guantanamo defendants also briefly suggest that Parrella should have recused himself because he did not rule out future DOJ employment. We cannot agree. Parrella affirmatively stated that he had no plans to seek employment with the DOJ, or anywhere else in the federal government for that matter, after his retirement. That fact makes this case entirely unlike the situation presented in *Al-Nashiri III*, where the presiding judge—while presiding—engaged in a covert, two-year negotiation regarding a DOJ position and accepted the position immediately after issuing a high-profile ruling in that case. Moreover, requiring a judge to recuse himself simply because he cannot rule out the *possibility* of future employment with a party appearing before him has no basis in precedent and could prove unworkable.

Reviewing all of the grounds for recusal proffered by the Guantanamo defendants together—Parrella's CTS fellowship, his relationship with Groharing, the possibility of future DOJ employment and his voir dire responses—we conclude that it is neither clear nor indisputable that Colonel Parrella should have recused himself. The circumstances of Parrella's career and relationships do not constitute reasonable bases for the extraordinary remedy of mandamus.

For the foregoing reasons, we deny the petitions.

*So ordered.*